**Nancy JOHNSON, Plaintiff,**

v.

**PLASTIC PACKAGING, INC., Defendant.**

**Civ. A. No. 94–30007–MAP.**

United States District Court,
D. Massachusetts.

July 25, 1995.

Frederick A. Hurst, Sapirstein, Mason, Hurst & Hurst, Springfield, MA, Tani E. Sapirstein, Sapirstein & Sapirstein, Springfield, MA, for plaintiff.

Francis D. Dibble, Jr., Mary J. Kennedy, Bulkley, Richardson & Gelinas, Springfield, MA, for defendant.

### MEMORANDUM REGARDING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS I, II, III, IV AND V

(Docket No. 26)

PONSOR, District Judge.

## I. INTRODUCTION

In July, 1993, plaintiff Nancy Johnson was terminated from her employment at Plastic Packaging, Inc. (hereinafter "Plastic") for violating a company directive not to speak with a certain male employee. The directive resulted from management suspicions that Johnson was dealing illegal drugs at work.

Johnson maintains that her termination had nothing to do with drug dealing. She alleges that she was terminated after being sexually harassed by Lewis Caputo, a Plastic Packaging supervisor and that her discharge was retaliatory and inspired by her repeated rebuffs of this supervisor's unwanted sexual advances. In addition, Johnson claims that she was denied pay equal to that received by a male supervisor, even though she performed substantially the same job.

In a seven-count complaint directed at her former employer, Johnson alleges gender discrimination, sexual harassment and retaliatory discharge in violation of Title VII and Mass.Gen.L. chs. 151B and 214, § 1C.

Defendant has moved for summary judgment on all counts except Counts VI and VII, the retaliation claims. The court will allow, in part, defendant's motion. Count III, a claim of sexual harassment brought pursuant to Mass.Gen.L. ch. 214, § 1C will be dismissed. In this instance, Title VII and ch. 151B and their administrative prerequisites provide the sole avenue for relief to plaintiff. Count V, a sexual harassment claim brought pursuant to Title VII, will also be dismissed in so far as it is duplicative of Count IV.

With respect to Counts I, II, IV, VI and VII, plaintiff has raised disputed issues of material fact that preclude judgment as a matter of law. These claims survive summary judgment with one notable caveat. Arguably, Count II, which alleges sexual discrimination based on unequal pay, rests on allegations that may establish a continuing violation. *See, Sabree v. United Brotherhood of Carpenters and Joiners,* 921 F.2d 396 (1st Cir.1990). However, the claim must nonetheless be truncated to comport with the continuing violation doctrine and limited to the period beginning with the events or the time when plaintiff was put on inquiry notice of the purported violation. This determination is a question of fact that cannot be resolved at summary judgment.

The court's reasoning as to these issues is set forth below.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "... if the pleadings, depositions, an-

swers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In other words, there must be "sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990) (quotes and citations omitted). The nonmovant has the burden of presenting substantial evidence that supports differing versions of the truth and requires resolution by a factfinder; unsupported conjecture will not suffice. *Mack v. Great Atlantic & Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989).

At this stage, the court must view all facts in the light most favorable to the non-movant and indulge all inferences to be drawn favorably to that party. *Petitti v. New England Tel. and Tel. Co.*, 909 F.2d 28, 31 (1st Cir. 1990).

## III. *FACTUAL BACKGROUND*

Viewed in the light of the summary judgment standard, the facts favoring plaintiff are as follows.

Plaintiff Nancy Johnson was employed as an hourly worker by defendant Plastic Packaging from December, 1989 until her termination in July of 1993. Soon after being hired, Johnson gradually assumed certain supervisory responsibilities previously performed by the general foreman, Dave Dewey.

After an illness forced Dewey to retire in 1991, Johnson maintains that she routinely performed a host of supervisory duties previously assigned to Dewey. These responsibilities included employee training, quality control and preparation of production reports. Johnson claims that she was denied pay equal for doing essentially the same work as Dewey, her male predecessor.

Over the course of two years she repeatedly made requests of her immediate supervisor, Earl Day, the general manager, Peter Webster, and the company president, Fred Weiss, for a salary increase to compensate her for the increased responsibilities. Johnson also asked that she be placed on salaried staff. She contends that negotiations over these issues continued throughout her tenure. Johnson further explains that Plastic's management placated her by acknowledging her requests with repeated promises of substantial pay increases. However, she received only modest increases in her hourly wage.

Johnson also contends that she was sexually harassed by the head of Plastic's maintenance department, Lewis Caputo. The harassment took place during 1992 and 1993 on company premises and offsite. The incidents included unwanted touching of Johnson's thighs and buttocks in Caputo's office when she delivered production reports to Caputo as required by her job duties. Caputo also made unwanted sexual advances while in a car with Johnson after they gave a sick employee a ride home. According to plaintiff, Caputo repeatedly propositioned her, offering to Johnson a number of incentives, including opportunities to become friendlier with top management and to receive pay raises if Johnson were to become Caputo's lover. There were also offers from Caputo of cash and a car in exchange for sexual favors. Johnson alleges that these unwanted overtures were pervasive enough to alter the conditions of her job and establish a hostile work environment.

According to Johnson, Caputo retaliated against the plaintiff because she continually refused his unwelcome and unsolicited advances. Sometime between late 1992 and early 1993, Caputo purportedly told Johnson that he would fire her and said that he became jealous whenever she talked to male Puerto Rican employees. In addition to threats of termination, Caputo spoke with the company president, Fred Weiss about Johnson, falsely accusing her of selling drugs at work. Weiss then asked Caputo to investigate Johnson's purported illegal drug-selling activities. Weiss's suspicions led to him

ordering Johnson not to speak to a particular employee, Juan Moldanado, a man also purportedly involved in drug dealing. Weiss told Johnson she would be terminated if she disobeyed this directive.

On Saturday, July 17, while Johnson was at the Plastics facility, she spoke to Moldanado. At deposition, Johnson testified that she merely informed Moldanado that his placement of a skid had created a safety hazard. Defendant offers no evidence to the contrary. Plaintiff alleges that word of Johnson's speaking to Moldanado soon reached Caputo, who then informed Weiss of the breach of his directive. On Monday, July 19, Johnson was terminated. No punishment was meted out to Moldanado.

Earl Day, Johnson's immediate supervisor, indicated in his deposition testimony that he disagreed with the decision to terminate her and that he did not believe the rumors that Johnson was dealing drugs. Day also testified that Weiss repeatedly conferred with Caputo in regard to the decision to fire Johnson. According to Day, Caputo strongly favored firing plaintiff and repeatedly discussed the issue with him as well as Weiss prior to the actual decision.

When Day informed Johnson that she was being terminated, she told Day that Caputo had been sexually harassing her. Day then conducted an investigation. He spoke with Caputo and another employee who supposedly witnessed Caputo's harassment of Johnson. According to Day's deposition testimony, Caputo did not deny that he had initiated unwanted physical contact with Johnson. But, Caputo characterized this physical contact as "horsing around" with Johnson and claimed that she never complained to him or asked him to stop. Day concluded that he had no evidence of sexual harassment and ended the investigation.

## IV. *DISCUSSION*

In her complaint, Johnson alleges sexual harassment in violation of ch. 151B (Count I), sexual discrimination in terms and conditions of employment, also in violation of ch. 151B (Count II), sexual harassment in violation of ch. 214 § 1C (Count III), sexual harassment and termination in violation of Title VII (Count IV), sexual harassment and termination also in violation of Title VII (Count V), and retaliation for complaining about her unequal pay and sexual harassment pursuant to Title VII and 151B (Counts VI and VII respectively).

Plastic Packaging has moved for summary judgment on all counts except Count VI and VII. Each of the five counts raised in defendant's motion is discussed below.

### A. *Counts I, IV and V: Sexual Harassment*

■ In Counts I, IV and V, Johnson alleges sexual harassment pursuant to ch. 151B(I) and Title VII (IV and V). At oral argument, plaintiff conceded that Counts IV and V are essentially identical and therefore the court will dismiss Count V. However, Johnson alleges sufficient facts to establish her claim of sexual discrimination pursuant to both ch. 151B and Title VII under either of the two recognized theories of liability, hostile work environment or *quid pro quo* sexual harassment. *See Chamberlin v. 101 Realty, Inc.,* 915 F.2d 777, 783 (1st Cir.1990). In *Meritor Saving Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Supreme Court established the elements of sexual harassment applicable to Johnson's sex discrimination claim: that plaintiff was subject to unwelcome sexual harassment; that the harassment was sexually motivated; that the employee's reaction to the supervisor's advances affected a tangible aspect of her employment, and that some basis for employer liability has been established. *Id.; Chamberlin v. 101 Realty, Inc.,* 915 F.2d at 783; *Johnson v. Teamsters Local Union No. 559,* 1995 WL 355304 (D.Mass. March 31, 1995).

Defendant argues that summary judgment is warranted on Count I and IV because plaintiff has not established a critical element of her claim: a basis for employer liability. Plastic maintains that it was not aware of the harassment Johnson experienced from Caputo until she informed Earl Day. Because plaintiff does not challenge this fact, Plastic further argues that it cannot be held strictly liable for the sexual harassment caused by Caputo since he was not Johnson's immedi-

ate supervisor and/or was not in the chain of command to which Johnson was assigned.

Plastic Packaging finds support for this argument in an unpublished decision, *Saad v. Stanley St. Treatment and Resources, Inc.,* C.A. No. 92–11434–DPW, 1994 WL 846911 (D.Mass. May 20, 1994). In the *Saad* case, a female management level employee charged her employer with a violation of ch. 151B, § 4(1), claiming that she had been sexually harassed by a male billing manager, an employee of equal or lesser status than plaintiff. *Id.* The *Saad* court granted the defendant employer's motion for summary judgment on the grounds that an employer is not *"per se* liable for the acts of supervisory employees who are not acting in their supervisory role when dealing with another employee." *Id.* at 17. Judge Woodlock went on to explain that, in this situation, an employer cannot be held strictly liable for the hostile environment created when one employee sexually harasses a non-subordinate co-worker. *Id.* at 18.

Defendant argues that the holding of *Saad* is dispositive to its motion. The court cannot agree. First, as defendant acknowledges, unlike the situation in *Saad,* Johnson and Caputo were not similarly situated in the company hierarchy. Here, the purported harasser was a departmental supervisor near the top of the facility's chain of command and the plaintiff was an hourly worker. Plastic nonetheless argues that the rule in *Saad* applies because Caputo was not "aided in accomplishing the alleged harassment by the existence of his position at Plastic Packaging, and he did not purport to act or speak on behalf of Plastic Packaging when he allegedly harassed Ms. Johnson." Defendant's Memorandum at 5.

Plastic's interpretation of *Saad* would heighten the standard for what Title VII or 151B requires to establish employer liability for the unlawful acts of a supervisor. In so doing, Plastic blurs a distinction courts have made between the standards for determining employer liability in a co-worker sexual harassment case like *Saad* and employer liability in a sexual harassment case involving a supervisor and an employee on a lower rung in the job hierarchy. Agency principles typically guide courts in drawing this distinction

on a case by case basis. *See Meritor Savings Bank v. Vinson* 477 U.S. at 72, 106 S.Ct. at 2408.

In the former situation involving co-worker sexual harassment, the plaintiff must prove that the employer knew or should have known of the harassment's occurrence. *Pierce v. Commonwealth Life Insurance Co.,* 40 F.3d 796, 803 (6th Cir.1994); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 901 (1st Cir.1988). But, in Johnson's situation, which involved a supervisor and an hourly employee, the rules of agency provide for a more flexible approach. *See Meritor Savings Bank v. Vinson,* 477 U.S. at 72, 106 S.Ct. at 2408 (lack of notice will not always insulate an employer from liability resulting from sexually hostile work environment).

The requirement of employer knowledge does not always apply in supervisor sexual harassment cases. In applying agency principles to the law forbidding sexual harassment there are situations where "the actions of a supervisor at a sufficiently high level in the hierarchy would necessarily be imputed to the company." *Karibian v. Columbia University,* 14 F.3d 773, 779 (2nd Cir.1994), *cert. denied,* —— U.S. ——, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994). The *Karibian* court held that employer liability for a sexually hostile work environment will lie where a supervisor uses his actual or apparent authority to harass an employee or if he was aided in accomplishing the harassment by the existence of the agency relationship with the employer. *Id.* at 780 citing, *inter alia, Restatement (Second) of Agency,* § 219 (1958); 29 C.F.R. § 1604.11(c). *Karibian* also explains the flip side of this rule. "[W]here a low-level supervisor does not rely on his supervisory authority to carry out the harassment, the situation will generally be indistinguishable from cases in which the harassment is perpetrated by the plaintiff's coworkers." *Id.; see also Pierce v. Commonwealth Life Insurance Co.,* 40 F.3d at 803.

Viewed in a light most favorable to Johnson, the facts before the court establish that Caputo exercised both his actual and apparent authority when he harassed Johnson. When Caputo made sexual overtures to

Johnson, he let her know that he had close ties to the company president and was able to provide her with tangible job benefits if Johnson would provide him with sexual favors. She was required routinely to come into contact with Caputo and to provide him with information she collected in the course of her duties. Based upon Caputo's initiative and actual position of authority, Weiss asked him to investigate the allegations of Johnson's drug dealing that Caputo himself raised. Finally, Caputo exercised his authority by threatening to fire Johnson after she refused his sexual advances. Indeed, according to Day, Caputo could have fired Johnson if Day had refused to carry out the company order to terminate plaintiff. Consequently, in this instance it is irrelevant that Caputo was not formally in Johnson's line of supervision.

In sum, the supervisor in this case is alleged to be a *quid pro quo* harasser who either actually or apparently wielded the employer's authority to alter the terms and conditions of employment. *Karibian v. Columbia University*, 14 F.3d at 777. Even though Caputo was not formally Johnson's supervisor, his exercise of actual authority and his apparent authority, as demonstrated by his role in this dispute, permit Johnson to have a factfinder decide whether Plastic Packaging is liable for Caputo's allegedly unlawful conduct.

The same result is reached under case law interpreting ch. 151B. The Supreme Judicial Court has interpreted ch. 151B to provide "employer liability for sexual harassment of subordinates committed by its supervisors ... [without any notice requirement] or necessity that the "employee complains to the employer." *College–Town, Division of Interco, Inc. v. Mass. Comm. Agst. Discrimination*, 400 Mass. 156, 166–167, 508 N.E.2d 587. (1987). "It is clear that the Legislature intended that an employer be liable for discrimination committed by those on whom it confers authority." *Id.* at 165, 508 N.E.2d 587.

In sum, the factual allegations before the court and the decisional law interpreting chapter 151B and Title VII require denial of defendant's motion for summary judgment on Counts I and IV.

### B. *Count II: Equal Pay Claim*

■ Defendant contends that Johnson's claim based on a denial of equal pay originated more than six months previous to her filing her claim with the Massachusetts Commission Against Discrimination and is therefore barred by ch. 151B's statute of limitations. Plaintiff responds that Plastic's ongoing failure to give her a promised salary increase while at the same time requiring that she perform additional duties constitutes an ongoing violation that places her claim within the six-month filing period required by ch. 151B.

It is clear that at least some portion of Johnson's claim of discrimination based on unequal pay is viable because the disparate treatment continued right up to the time of her termination. In order for Johnson to reach back and recover for discriminatory acts outside the limitations period, a substantial relationship between the timely and untimely acts must be proven. *Sabree v. United Broth. of Carpenters and Joiners*, 921 F.2d 396 (1st Cir.1990); *see also Desrosiers v. Great Atlantic and Pacific Tea Co.*, 885 F.Supp. 308, 311–12 (D.Mass.1995). In this regard, the most important inquiry is whether "the act outside the limitations period has the degree of permanence which should trigger an employee's awareness and duty to assert his or her rights." *Id.* In other words, if the plaintiff "has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern, she is on inquiry notice and has a duty to assert her rights." *Id.*

Plaintiff argues that she was not on notice of her employer's discriminatory conduct because the defendant repeatedly promised to give her a pay raise. She never received a definitive rebuff on this issue. Given that the employer's promises were repeated over a two-year period, Johnson's position is untenable. However, determining *when* plaintiff was put on inquiry notice requires a credibility determination that cannot at this point be made. Upon hearing further evidence on this question, it will be up to a

factfinder to determine at exactly what point it became unreasonable for plaintiff not to have discerned the overall discriminatory pattern and filed her claim.

### C. *Count III, Sexual Harassment under Mass.Gen.L. ch. 214, § 1C*

Johnson has also alleged her claim of sexual harassment in Count III pursuant to Mass.Gen.L. ch. 214 § 1C, a separate statutory provision vesting the superior court with original equity jurisdiction to resolve sexual harassment claims. Defendant has correctly argued that ch. 151B and its administrative prerequisites provide the sole avenue for remedy relief in these circumstances. In a discussion of ch. 214, § 1C and its relation to the exclusivity of remedy of ch. 151B, the First Circuit has made it clear that, at least in situations where an employee may avail herself of ch. 151B, this statute provides the exclusive state-law remedy for a sexual harassment claim. *See Clarke v. Kentucky Fried Chicken of California, Inc.,* 57 F.3d 21, 26–27 (1st Cir.1995). Defendant's motion to dismiss Count III will therefore be allowed.

### V. *CONCLUSION*

For the reasons set forth above, the court will ALLOW defendant's motion for summary judgment as to Counts III and V. As to the remaining counts, defendant's motion for summary judgment will be DENIED.