KATHLEEN O'CONNELL *vs.* SHIMON CHASDI & another.[1]

Norfolk. May 7, 1987. — August 12, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ. .

*Workmen's Compensation Act,* Injuries to which act applies, Emotional distress, Common employment. *Emotional Distress. Employment,* Discrimination, Sexual harassment. *Civil Rights,* Availability of remedy. *Actionable Tort. Constitutional Law,* Equal Rights Amendment.

The exclusivity provisions of the Workmen's Compensation Act, G. L. c. 152, §§ 15 & 24, did not bar an action by an employee against a coemployee, stating claims for assault and battery and intentional infliction of emotional distress arising from alleged sexual harassment by the defendant. [689-691]

Sexual harassment involving threats, intimidation, or coercion directed toward a member of a class of persons whose right to equal treatment under the law is guaranteed by art. 1 of the Massachusetts Declaration of Rights is conduct proscribed by the Massachusetts Civil Rights Act, G. L. c. 12, § 11I. [691-694] LYNCH, J. dissenting.

CIVIL ACTION commenced in the Superior Court Department on May 15, 1981.

The case was tried before *Alan J. Dimond,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Wendy A. Kaplan (Marion Sugden Lill* with her) for the plaintiff.

*Marjorie Heins,* for Civil Liberties Union of Massachusetts & another, amici curiae, submitted a brief.

HENNESSEY, C.J. The plaintiff brought this action in the Superior Court against the defendants, alleging assault and battery, intentional infliction of emotional distress, and violation

[1] Institute for International Education Programs, Inc.

of her civil rights under G. L. c. 12, § 11I (1986 ed.). After the jury returned verdicts for the plaintiff on her claims against Chasdi for assault and battery and intentional infliction of emotional distress, the judge granted Chasdi's motion for judgment notwithstanding the verdicts on the ground that those claims were barred by the exclusivity provisions of the workers' compensation act, G. L. c. 152, §§ 15 and 24 (1986 ed.). In addition, the judge ordered judgment for the defendants on the plaintiff's claims under the Massachusetts Civil Rights Act, G. L. c. 12, § 11I.

In the spring of 1980, the plaintiff, Kathleen O'Connell, was hired as assistant to the director of the Institute for International Education Programs, Inc. (Institute). The defendant, Shimon Chasdi, was the director of the Institute. Shortly thereafter, Chasdi and O'Connell departed on a business trip to South America. Beginning on the airplane flight at the start of the trip, Chasdi engaged in a series of sexual advances and other objectionable actions of a sexual nature. On the airplane, Chasdi asked O'Connell to share a hotel room with him. When she refused Chasdi said that it was "rigid and inflexible" on her part. He repeated this request in the taxi from the airport. Again she refused.

During the business trip, Chasdi repeatedly made physical advances toward O'Connell placing his hand on her knee, hugging her, stroking her hair and face, and attempting to hold her hand. O'Connell resisted his advances, telling him that such contact was unwelcome. Nevertheless, Chasdi persisted. He renewed his request that O'Connell share his hotel room, and when she refused, Chasdi said that she "was very unsophisticated. It was probably because of [her] Catholic background, and that kind of thing is very common when you're working internationally, and that [she] would have to learn how to deal with these things in a more sophisticated way."

As O'Connell resisted Chasdi's advances, he became increasingly critical of her, and began to threaten her job. During one taxi ride from a meeting, Chasdi attempted to hold O'Connell's hand. When she withdrew her hand, Chasdi said, "I think you should go back to Boston. When I get back, we can

discuss whether you should continue to work for the organization." Soon thereafter, however, Chasdi changed his mind about having O'Connell return to Boston. O'Connell felt that her job was in jeopardy if she did not continue on the trip.

Chasdi's behavior did not improve. He questioned O'Connell about her personal life, and criticized her for her morals, calling her "rigid and Catholic." Chasdi continually tried to touch O'Connell, and became angry and critical when she resisted. Chasdi told her, "You have no quality in your thinking. I'm eliminating you." Another time, Chasdi punished O'Connell for resisting his advances by not allowing her to attend meetings that day, and later told her "he didn't know if [she] was capable of the close working relationship you needed in this job." Once, when Chasdi visited O'Connell in her hotel room because she was ill, Chasdi lifted the bedcovers and stroked her thighs. Finally, when Chasdi had a maid let him into O'Connell's room while she was sleeping, O'Connell decided to return to Boston alone. She left the next day. When Chasdi returned to Boston a few days later, O'Connell confronted him. He denied that anything had happened, and said that nobody would believe her. O'Connell resigned shortly thereafter.

O'Connell brought this action against Chasdi and the Institute, asserting claims against Chasdi for assault and battery and intentional infliction of emotional distress, and against Chasdi and the Institute for violation of her civil rights under G. L. c. 12, § 11I.[2] The judge ruled that G. L. c. 12, § 11I, did not entitle the plaintiff to a jury trial, and therefore instructed the jury only on the assault and battery and intentional infliction of emotional distress claims against Chasdi. The jury returned a verdict for damages of $25,000 for assault and battery and $100,000 for intentional infliction of emotional distress. In response to a special question, the jury indicated that the damages awarded for intentional infliction of emotional distress included the amount awarded for assault and battery.

---

[2] O'Connell brought various other claims against both Chasdi and the Institute, on which the judge granted the defendants' motions for summary judgment. O'Connell has not appealed the allowance of summary judgment on these claims.

As to the claims for assault and battery and intentional infliction of emotional distress, the judge granted Chasdi's motion for judgment notwithstanding the verdicts. As to the claim under the Civil Rights Act, the judge, who was hearing that matter without jury, ordered the entry of judgment for the defendants.[3]

1. In granting Chasdi's motion for judgment notwithstanding the verdicts on the claims of assault and battery and intentional infliction of emotional distress, the judge reasoned that the exclusivity provisions of the workers' compensation act precluded separate, common law claims against Chasdi. The judge relied on *Foley* v. *Polaroid Corp.,* 381 Mass. 545 (1980), *S.C., ante* 82 (1987), and *Tenedios* v. *Wm. Filene's Sons Co.,* 20 Mass. App. Ct. 252 (1985). We disagree, and conclude that the judge erred.

General Laws c. 152, § 15 (1986 ed.), provides in part: "Where the injury for which compensation is payable was caused under circumstances creating a legal liability in some person other than the insured to pay damages in respect thereof, the employee shall be entitled, without election, to the compensation and other benefits provided under this chapter. . . . Nothing in this section . . . shall be construed to bar an action at law for damages for personal injuries or wrongful death by an employee *against any person other than the insured person* employing such employee and liable for payment of the compensation provided by this chapter for the employee's personal injury or wrongful death *and said insured person's employees"*

---

[3] Most of Chasdi's objectionable behavior took place outside of Massachusetts. Hence, the issue whether Massachusetts law is applicable might arise; however, no party raised the issue before this court, and there is nothing in the record to indicate that it was raised at trial. Therefore, we consider the issue not before us, although we do observe there were many Massachusetts contacts, including: both parties were domiciled in Massachusetts at all relevant times, their employment relationship, which is particularly relevant to the claim under the Civil Rights Act, was based in Massachusetts, and the employer was a Massachusetts corporation. See generally *Saharceski* v. *Marcure,* 373 Mass. 304, 310-312 (1977). Moreover, we note that the statute does not contain a provision limiting its application in such circumstances. G. L. c. 12, § 11I.

(emphasis added). The precise question before us is whether the act bars an action against a fellow employee who commits an intentional tort which was in no way within the scope of employment furthering the interests of the employer.[4] We have stated that "an employee injured in the course of his employment by the negligence of a fellow employee may not recover from that fellow employee if he also was acting in the course of his employment." *Saharceski* v. *Marcure,* 373 Mass. 304, 306 (1977), citing *Murphy* v. *Miettinen,* 317 Mass. 633, 635 (1945). See *Mendes* v. *Tin Kee Ng, ante* 131, 134-135 (1987). Where a fellow employee commits an intentional tort not related to the interests of the employer, on the other hand, the policies behind the act would not be served by immunizing the coemployee.[5] Two purposes of immunizing coemployees have been suggested. First, employee immunity might be considered a quid pro quo, part of the general compromise of employer and employee rights involved in the act. Second, the act might be considered to protect employees not only from being injured themselves, but also from the risk of personal liability for negligently injuring others as part of the circumstances of employment. 2A A. Larson, Workmen's Compensation Law § 72.10 (1987). L. Locke, Workmen's Compensation § 662, at 802 n.9 (2d ed. 1981). Neither of those policies supports immunizing coemployees for intentional torts not related to the interests of the employer. We do not think that the right to commit such acts with impunity was part of the general compromise of rights involved in the act. Moreover, liability for such inten-

---

[4] Because the judgments for intentional infliction of emotional distress and assault and battery were against Chasdi only, we need not express an opinion whether, under the facts of this case, O'Connell's injuries are compensable under the workers' compensation act, and whether a separate action against the employer would be barred by the exclusivity provisions of the act. Cf. *Foley* v. *Polaroid Corp., supra; Tenedios* v. *Wm. Filene's Sons Co., supra.*

[5] We need not discuss here the argument that an intentional tort (e.g., assault and battery) by an employee (e.g., a security officer) against a coemployee might, in some circumstances, be so related to the employer's interests as to immunize the offending employee. In the case before us, the torts were not remotely related to the employer's interests.

tional torts is not part of the circumstances of employment, unlike liability for negligently injuring others in the course of employment. Such intentional torts are not an accepted risk of doing business. See, e.g., *Elliott* v. *Brown,* 569 P.2d 1323 (Alaska 1977); *Maines* v. *Cronomer Valley Fire Dep't,* 50 N.Y.2d 535 (1980); *Williams* v. *Smith,* 222 Tenn. 284 (1968); *Bryan* v. *Utah Int'l,* 533 P.2d 892 (Utah 1975); 2A A. Larson, Workmen's Compensation Law, *supra.* In all respects, the evidence was sufficient to warrant the jury verdicts. Therefore, we conclude that the judge erred in granting Chasdi's motion for judgment notwithstanding the verdicts on O'Connell's claims for assault and battery and intentional infliction of emotional distress.

2. The judge concluded that O'Connell's claims under the Massachusetts Civil Rights Act, G. L. c. 12, § 11I, would not be submitted to the jury, but instead would be determined by the judge.[6] The judge found that Chasdi's conduct involved force, threats, and intimidation. Nevertheless, the judge concluded that O'Connell had not shown that the defendants interfered with any rights secured by the Constitution or laws of the United States or of the Commonwealth. O'Connell argues that the judge erred in ordering judgment for the defendants as to the civil rights claims.[7]

---

[6] Neither party has argued the issue, and we express no opinion, whether the judge was correct in concluding that there was no right to a jury trial under G. L. c. 12, § 11I (1986 ed.).

[7] General Laws c. 12, § 11I (1986 ed.), provides: "Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatory money damages. Any aggrieved person or persons who prevail in an action authorized by this section shall be entitled to an award of the costs of the litigation and reasonable attorneys' fees in an amount to be fixed by the court." Section 11H provides that the proscribed interference with secured rights is established "[w]henever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of [secured] rights . . . ."

The Massachusetts Civil Rights Act was enacted in response to problems of racial violence and harassment. See *Batchelder* v. *Allied Stores Corp.,* 393 Mass. 819, 821 (1985) (*Batchelder II*). In addressing these problems, "[t]he Legislature at least intended to incorporate a proscription on private acts in deprivation of secured constitutional rights." *Bell* v. *Mazza,* 394 Mass. 176, 181 (1985). In *Bell* v. *Mazza,* we rejected a restrictive interpretation of what rights are secured, and stated, "A right is 'secured . . . by the Constitution' . . . if it emanates from the Constitution, if it finds its source in the Constitution." *Id.* at 182, quoting *United States* v. *Guest,* 383 U.S. 745, 778-779 (1966) (Brennan, J., concurring in part and dissenting in part). We concluded that the Massachusetts Civil Rights Act did not require that the person whose conduct is challenged be acting under color of law. Moreover, the "right secured by the Constitution" was not limited to rights as secured only against the government, but would be applied in a private context as well. Compare *Bell* v. *Mazza, supra* at 182 (private persons who interfered with plaintiffs' use of private property liable under G. L. c. 12, § 11I) with *United States* v. *Guest, supra* at 780 (Brennan, J., concurring in part and dissenting in part) (private persons interfered with complainants' right to use State facilities). Cf. *United States Jaycees* v. *Massachusetts Comm'n Against Discrimination,* 391 Mass. 594, 609 n.9 (1984) ("the protections of constitutional rights introduced in the Massachusetts Civil Rights Act may *not* be limited to State action").

The judge concluded that O'Connell had not established that Chasdi interfered with her "right to equal protection of the laws against sex discrimination." The judge reasoned that, to show sex discrimination, the plaintiff must demonstrate that "she suffered a wrong under an impermissible gender-based classification." O'Connell argues that Chasdi's conduct violated her rights secured by art. 1 of the Declaration of Rights, including the Equal Rights Amendment.[8]

---

[8] At trial, O'Connell also argued that Chasdi had interfered with her rights of free speech and religion. We do not address these claims because, not having argued them on appeal, she has waived them.

Article 1 of the Declaration of Rights, as amended by art. 106 of the Amendments, provides: "All people are born free and equal and have certain natural, essential and unalienable rights; among which may be reckoned the right of enjoying and defending their lives and liberties; that of acquiring, possessing, and protecting property; in fine, that of seeking and obtaining their safety and happiness. Equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin." In *College-Town, Div. of Interco, Inc.* v. *Massachusetts Comm'n Against Discrimination, ante* 156, 162 (1987), we stated that "sexual harassment may constitute discrimination in violation of G. L. c. 151B, § 4 (1)."[9] "A work environment pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, poses a formidable barrier to the full participation of an individual in the workplace." *Id.*

We conclude that discrimination of the type described in *College-Town* also violates rights secured by art. 1. Cf. *United States Jaycees, supra; Bohen* v. *East Chicago,* 799 F.2d 1180, 1185 (7th Cir. 1986) (sexual harassment violates equal protection clause of Fourteenth Amendment to the United States Constitution, analogizing cases decided under Title VII of the Civil Rights Act of 1964). "The equal protection guaranty and a fortiori an equal rights amendment condemn discrimination on grounds of sex." *Attorney Gen.* v. *Massachusetts Interscholastic Athletic Ass'n, Inc.,* 378 Mass. 342, 351 (1979). See *Blue Hills Regional Dist. School Comm.* v. *Flight,* 383 Mass. 642, 644 (1981). Cf. *Davis* v. *Passman,* 442 U.S. 228, 235 (1979) ("The equal protection component of the Due Process Clause thus confers on petitioner a federal constitutional right to be free from gender discrimination which cannot meet

---

[9] The provisions of G. L. c. 151B, § 4 (1986 ed.), do not apply in this case because the Institute has fewer than six employees. G. L. c. 151B, § 1 (5). We express no opinion whether G. L. c. 151B, § 4, would be the exclusive remedy against an employer it covers. Cf. *Comey* v. *Hill,* 387 Mass. 11, 20 (1982); *Mouradian* v. *General Elec. Co.,* 23 Mass. App. Ct. 538 (1987); *Melley* v. *Gillette Corp.,* 19 Mass. App. Ct. 511, 514 (1985), *S.C.,* 397 Mass. 1004 (1986).

these requirements [of substantial relation to the achievement of important governmental objectives]"). Hence, we also conclude that sexual harassment by a person not acting under color of law may violate secured rights within the meaning of G. L. c. 12, § 11I. As a remedial statute, G. L. c. 12, § 11I, has been interpreted liberally to accomplish its purposes. *Batchelder II, supra* at 822. As we have stated, the Massachusetts Civil Rights Act was intended to provide a remedy for victims of racial harassment. *Batchelder II, supra* at 821. Sexual harassment accomplished by threats, intimidation, or coercion constitutes precisely the kind of conduct proscribed by the act, and is similarly directed toward a class explicitly protected by art. 1. Cf. *Commonwealth* v. *Soares*, 377 Mass. 461, 488-489, cert. denied, 444 U.S. 881 (1979) (art. 1 "delineat[es] those generic group affiliations which may not permissibly form the basis for juror exclusion"). Nor is an absence of hostile intent important, for we have interpreted the statute not to require a showing of hostile, discriminatory animus. See *Redgrave* v. *Boston Symphony Orchestra, Inc.*, 399 Mass. 93, 100 (1987).

On the basis of these principles, it is evident that a finding for the plaintiff was warranted on her civil rights claims. Nevertheless, it appears that the judge ruled that such a finding was precluded as a matter of law, and it appears that the judge never exercised his function as a fact finder on the civil rights claims.

3. Accordingly, we remand this case to the Superior Court for consideration by the judge of O'Connell's claims against Chasdi and the Institute under G. L. c. 12, § 11I.[10] As to O'Connell's claims against Chasdi for intentional infliction of emotional distress and assault and battery, judgments are to be entered for the plaintiff, with damages totalling $100,000.

*So ordered.*

---

[10] The plaintiff stated before this court that, if judgments for the plaintiff are affirmed as to the two jury verdicts, she would seek no further damages as to the civil rights claims, but would continue to assert her right to attorneys' fees as to the civil rights claim.

LYNCH, J. (dissenting). I believe the court by its decision today so broadly construes the Massachusetts Constitution that it has created a boundless right of one citizen to sue another which is both unprecedented and unwarranted. I, therefore, dissent.

The sole basis for the plaintiff's appeal to this court is that she was deprived of her right to equal protection of the laws against sex discrimination. I do not agree that she makes such a case. First of all, I would hold that she has no constitutionally protected right to be free of sexual harassment at her place of employment. The Massachusetts Civil Rights Act protects against the interference with an individual's rights protected by the Constitution or laws of the Commonwealth. As the court correctly observes, it was recently decided that "sexual harassment may constitute discrimination in violation of G. L. c. 151B, § 4 (1)," quoting *College Town, Div. of Interco, Inc. v. Massachusetts Comm'n Against Discrimination, ante* 156, 162 (1987). But the court also correctly points out that G. L. c. 151B, § 4, does not apply in this case. *Ante* at 693 n.9. It is clear that the plaintiff cannot mount an equal protection challenge on the basis of a statute that does not apply, and she relies on no other statute. She is, therefore, left with a sex-based discrimination claim founded exclusively on the Massachusetts Constitution. As reprehensible as the defendant's personal conduct toward the plaintiff was, I conclude that it does not reach the level of conduct which violates the Massachusetts Constitution. The defendant's acts were not directed against the plaintiff because she was a woman, but because she was sexually appealing to him. *Huebschen* v. *Department of Health & Social Servs.,* 716 F.2d 1167, 1171-1172 (7th Cir. 1983). Sexual harassment could exist if a supervisor was of the same sex as a subordinate, or by a female supervisor against a male subordinate, depending on the sexual orientation of the supervisor. Such conduct can be, and is, forbidden by statute but is not discriminatory conduct directed toward the subordinate because he or she is a man or a woman. The fact that the court has concluded that failure to prevent sexual harassment constitutes discrimination based on sex against an employee in terms,

conditions, or privileges of employment within the meaning of G. L. c. 151B, § 4 (1), does not compel the conclusion that the plaintiff has been denied equality under the law because of her sex. To me, a mere reading of the language of art. 1 compels the opposite conclusion. The plaintiff has not been deprived of any legally protected right because of her sex. She has been subjected to reprehensible conduct of a sexual nature, which is prohibited by a statute that does not apply. Article 1 of the Mass. Declaration of Rights, as amended by art. 106 of the Amendments, does not protect against offensive behavior because of its sexual connotation. Surely not every "off color" joke, sexual innuendo, double entendre, or unwarranted proposition offends the Massachusetts Constitution. To conclude so not only creates a source of constitutionally based claims without limit or clear definition, but also trivializes and offends the dignity of that great instrument.

In reaching this view, I am not unmindful of the Federal decisions that have found sexual harassment violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution. *Bohen* v. *East Chicago,* 799 F.2d 1180, 1185 (7th Cir. 1986), and cases cited. That those decisions do not compel a similar result here can be explained by important differences between the two instruments. The Fourteenth Amendment requires State action and, therefore, it has no application to individual conduct not reaching the level of State action. Secondly, most, if not all, of the cases of sexual harassment cognizable under Federal equal protection principles have arisen in the context of the State as an employer which has condoned, or at least permitted, sex-based working conditions to exist free of penalty, admonition, or opprobrium. Even in the Federal context, where a State action requirement exists, not every case of sexual harassment rises to the level of a denial of equal protection. *Bohen* v. *East Chicago, supra* at 1186, and cases cited.

Furthermore, the court's application of art. 1 to the facts of this case runs counter to the essence of equal protection analysis. It has been said that the central purpose of the Federal equal protection clause, "made clear by its wording, is to

prevent states from withdrawing legal protection from minorities." *Bohen* v. *East Chicago, supra* at 1190 (Posner, J., concurring). The same is true of art. 1. What is prohibited by art. 1 is the denial of the equal application of a law to a protected class. The vice protected against is the withdrawal of legal protection from a specified class of citizens with the result that members of that class are afforded less protection than citizens generally. The essence of equal protection is the denial of equality *under law*. Therefore, no law can constitutionally be enacted that would not be uniformly applied to all citizens regardless of sex, race, color, creed, or national origin, nor could any law be applied or enforced so as to achieve unequal results among those enumerated classes. Thus by its very words art. 1 forbids the unequal treatment under law of those classes protected. The Legislature cannot, of course, rewrite the Constitution and, therefore, it cannot abolish the equality under law requirement of art. 1. Whatever else the phrase "whether or not under color of State law" means in the Massachusetts Civil Rights Act, that language cannot eliminate the "under law" requirement of art. 1. Therefore, there is no statutory or constitutional prohibition of the conduct which is the basis of the plaintiff's claims.

The view expressed here is not inconsistent with *Bell* v. *Mazza,* 394 Mass. 176 (1985), on which the court places substantial reliance. In that decision, the court concluded that G. L. c. 12, § 11I, authorized a suit against a private person even though no State action was involved. The plaintiffs in *Bell,* however, alleged that the defendants had interfered with rights guaranteed by art. 10 of the Massachusetts Declaration of Rights, the enjoyment of life, liberty, and property. Although *Bell* involved interference with property it follows that any interference with an individual's life or liberty by threats or coercion would be also actionable under G. L. c. 12, § 11I, without any State action. Since art. 1 by its very terms protects an individual against discriminatory State action, the court's reasoning in *Bell* v. *Mazza* has no application to claims based solely on a denial of equal protection in the absence of State action.

Although the analysis I espouse is not inconsistent with that of *Bell* v. *Mazza,* I should point out that the reconciliation of these views is a burden I do not bear.

I believe that *Bell* v. *Mazza* was wrongly decided and that it was not compelled by *Batchelder* v. *Allied Stores Corp.,* 393 Mass. 819 (1985) (*Batchelder II*), a decision construing a plaintiff's right under art. 9. In *Batchelder* v. *Allied Stores Int'l, Inc.,* 388 Mass. 83 (1983) (*Batchelder I*), the court was careful to point out it was limiting the scope of its decision to ballot access under art. 9, not free speech in general because:

> "Ballot access is of fundamental importance in our form of government because through the ballot the people can control their government. See *Bachrach* v. *Secretary of the Commonwealth,* 382 Mass. 268, 272 n.9 (1981). In limiting our decision to the matter of soliciting signatures on ballot questions, we leave to another day the question of rights that may arise under art. 16 (free speech). The concept of free elections and an equal right to be elected 'for public employments' embodied in art. 9 supports our conclusion that Batchelder has a constitutional right to solicit signatures at the North Shore Shopping Center. The difference between free speech and art. 9 rights to free elections and to be a candidate equally with others is not purely theoretical. Ideas and views can be transmitted through the press, by door-to-door distributions, or through the mail, without personal contact. On the other hand, a person needing signatures for ballot access requires personal contact with voters. He or she cannot reasonably obtain them in any other way. Reasonable access to the public is essential in ballot access matters" (footnote omitted). *Id.* at 91-92.

Two members of the court joined me in *Batchelder I* in the view that even the fundamental right of ballot access under art. 9 protects the people against "governmental abridgements and not [from] interferences generally." *Batchelder I, supra* at 95 (Lynch, J., dissenting). The court therefore began with a limited abridgement of the State action requirement under

art. 9 (*Batchelder I*), passed to a reading of the Declaration of Rights free of any State action limitation for the rights specifically protected (*Bell* v. *Mazza*), and finally today ends the cycle with an interpretation that stands for the proposition that the right of equality under the law does not depend upon the existence of any specific law or constitutionally guaranteed right. This goes far beyond what would have followed from *Batchelder I or Bell* v. *Mazza*. Regretably, the court has fulfilled my prediction in *Batchelder I*: "Now there is no limit to the range of wrongs which this court may right," *Batchelder I, supra* at 97 (Lynch, J., dissenting), quoting *Alderwood Assocs.* v. *Washington Envtl. Council,* 96 Wash. 2d 230, 250-251 (1981) (Dolliver, J., concurring).

I would affirm the judgment of the Superior Court.