Cowin, J.

*512
INTRODUCTION

On March 29, 1995, the plaintiff, Cheryl Jarvi, brought suit against the defendants, Cape Cod Alcoholism Intervention and Rehabilitation Unit, Inc. (CCAIRU, Inc.) d/b/a/ Gosnold on Cape Cod and Raymond Tamasi, Chief Executive Officer, CCAIRU, Inc. The complaint contains seven counts against the defendants: Count I for breach of contract; Count II for violation of public policy; Count III for breach of covenant of good faith and fair dealing; Count IV for promissory estoppel; Count V for infliction of emotional distress; Count VI for sexual harassment; and Count VII for prohibited discrimination. On November 18, 1996, this matter came before the Court for hearing on defendants’ motion for summary judgment. For the reasons discussed below, the defendants’ motion for summary judgment on Counts I, III, IV and V is DENIED and the defendants’ motion for summary judgment on Counts II, VI and VII is ALLOWED.

BACKGROUND

The following facts are drawn from the summary judgment record taken in favor of the plaintiff as the non-moving party. The plaintiff was a private consultant and owner of her own business until she was hired at Cape Cod Alcoholism Intervention and Rehabilitation Unit, Inc. d/b/a/ Gosnold on Cape Cod (CCAIRU) on May 11, 1993 as Director of Administration, the number two position at CCAIRU. Although plaintiff and CCAIRU had no written contract, the plaintiff claims that she accepted the job upon the express conditions and promises made to her during the negotiations that preceded her employment with CCAIRU. Specifically, the plaintiff states that she was promised a bonus for each grant she obtained for the defendants. These bonuses were to be in addition to her sixty-seven thousand dollar ($67,000.00) annual salary. The plaintiff requested a salary in the low eighty thousands and was assured that her bonuses would make up the difference. However, the plaintiff was never given a bonus, even after she wrote the application for a Federal Pregnancy Grant which yielded the defendants in excess of four million dollars ($4,000,000.00).
The plaintiff also claims that she was promised immediate life and disability insurance. Although the costs of coverage were deducted from her pay from the date of hire, the plaintiff was not covered for the first ninety (90) days of employment.[2] In addition, the plaintiff states that she accepted the job because she was told that her position would carry a high degree of responsibility. She claims that the defendants promised to record these responsibilities in an offer letter which the plaintiff never received. Allegedly, the plaintiff was told that her duties would include: 1) developing a centralized intake system; 2) purchasing or obtaining necessary computer hardware; 3) being responsible for budgets, financial forecasting, increasing profitability, improving utilization market share, volume quality improvement, new program and business development and management supervision; and 4) being involved in accreditation for the facility. However, the plaintiff argues that she was not allowed to conduct any of the duties promised.
After the plaintiff was employed by the defendants, she states that she was promised a vehicle, a car telephone, a credit card and keys to the facilities. Although she claims she was to receive these items immediately, she was given the credit card and keys after being employed for nine and three months respectively and she never received the vehicle and car telephone.
In addition to the unfulfilled promises made by the defendants to the plaintiff, the plaintiff alleges that the defendants allowed a hostile and discriminatory work environment to exist. For instance, the plaintiff claims that postcards of semi-nude women were on display in the office. Moreover, the plaintiff argues that she was denied benefits and duties while male employees, in lower positions, were afforded such rights. Further, the plaintiff states that on three occasions she was placed in physical fear while at work. On one occasion, Raymond Tamasi, the Chief Executive Officer of CCAIRU, allegedly pointed a gun at the plaintiff and asked her if she knew who was the boss. On two other occasions, he threw telephones across the room at the plaintiff.
The plaintiff claims in effect that she was constructively discharged from CCAIRU. She states that although she was never fired, conditions of her employment became so impossible that she was forced to resign on August 12, 1994 after enduring employment as long as possible. On October 21, 1994, the Commissioner of the Department of Employment and Training (DET) concluded that the plaintiff was entitled to unemployment benefits because she was not discharged for deliberate misconduct or a knowing violation of a reasonable and uniformly enforced rule or regulation but rather she left her job for good cause attributable to her employer or its agent. CCAIRU appealed this decision to the Board of Review of DET. After examining the record, findings of fact and decision from the Commissioner’s hearing, the Board of Review denied the application for review.

DISCUSSION

Summary judgment is granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.R 56 (c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and of establishing “that the summary judgment record entitles the moving party to judgment as a matter of law." Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden *513 of proof at trial must demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party then must respond by articulating specific facts which establish the existence of a genuine issue of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).

A.Counts I, III and IV - Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing and Promissory Estoppel

The plaintiffs claims for breach of contract, breach of covenant of good faith and fair dealing and promissory estoppel are all based on the allegations that the defendants made promises to the plaintiff in part as a condition of her acceptance of employment, which promises were never fulfilled. The plaintiff argues that she left a very lucrative business and accepted the defendants’ employment offer upon the express condition and promise that she would receive, among other things, bonuses and a high level of responsibility. Defendants deny that these promises were made and that even if there were promises, they were not conditions of employment. Since genuine issues of material fact exist on these claims, summary judgment is not appropriate.

B.Counts VI and VII - Sexual Harassment and Prohibited Discrimination

General laws c. 151B, §§4(16A) and 5 provide a remedy for employees who are victims of sexual harassment by their employers or their agents. A complaint of unlawful discrimination pursuant to G.L.c. 151B must be filed with the Massachusetts Commission against Discrimination (MCAD) within six months of the alleged act of discrimination. G.L.c. 151B, §5. “In the absence of a timely complaint to the MCAD, there may be no resort to the courts.” Sereni v. Star Sportswear Manufacturing Corp., 24 Mass.App.Ct. 428, 430 (1987).
General laws c. 214, § 1C grants all persons the right to be free from sexual harassment as defined in G.L.c. 15 IB. It also provides that “[t]he superior court shall have jurisdiction in equity to enforce this right... and to award damages.” G.L.c. 214, §1C. Until recently, it was unsettled whether, in enacting G.L.c. 214, §1C, the Legislature intended to create a duplicative remedy for victims of sexual harassment, such that a plaintiff may either seek relief initially by filing a complaint with the MCAD, or bypass the MCAD entirely and file a suit directly in the Superior Court. In Green v. Wyman-Gordon Company, 422 Mass. 551 (1996), the Supreme Judicial Court ruled that a plaintiff who did not file a complaint with the MCAD within the six-month statutory time period was precluded from bringing her sexual harassment suit in the Superior Court under G.L.c. 214, §1C. The Court held that G.L.c. 151B’s “[rjemedies and procedures are exclusive and bar the plaintiffs claim under G.L.c. 214, §1C.” Id. at 555. Accordingly, “(wjhere c. 15IB applies, a person may not evade its procedural requirements by recasting a discrimination claim as a violation of . . . [G.L.c. 214, §1C[.” Id.
During oral argument, the plaintiff conceded that given the law as explicated by the Green decision, her failure to file a complaint with the MCAD was fatal to her claims for sexual harassment and prohibited discrimination. Accordingly, summary judgment is appropriate on the plaintiff’s claims for sexual harassment and prohibited discrimination.

C.Count II - Violation of Public Policy

In Count II, the plaintiff alleges that she performed acts that public policy would encourage when she sought to rid the workplace of sexually offensive materials displayed in common work areas. The plaintiff states that she was criticized and belittled for her attempts to rid the workplace of the offensive material and that she had to physically remove a display of sexually offensive pictures or postcards after her repeated requests to cure the problem were not acted upon by Raymond Tamasi. It is unclear from plaintiffs allegations whether she is alleging that as an at-will employee she was involuntary terminated in violation of public policy.[3] However, the Court assumes that the plaintiffs allegation of involuntary termination is the basis of this claim.
Generally, Massachusetts employers are free to terminate an at-will employee at any time and for any reason. Fortune v. Nat’l Cash Register Co., 372 Mass. 96, 100-01 (1977). However, the Supreme Judicial Court has recognized an exception to the general rule when employment is terminated contrary to a clearly established public policy. Hobson v. McLean Hosp. Corp., 402 Mass. 413, 416 (1988). “Although the term ‘public policy’ is amorphous,... the public policy exception to the at-will employment rule has been made available to employees discharged for performing important public deeds . . . While the importance of a public deed is not determined on the sole basis of whether the law absolutely requires its performance, . . . such a mandate would bespeak a legislative determination of the importance of the act to the public.” Mistishen v. Falcone Piano Co., 36 Mass.App.Ct. 243, 245 (1994)(citations omitted).
Redress is available under the public policy exception for at-will employees “[w]ho are terminated for asserting a legally guaranteed right (e.g., filing workers’ compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury).” Wright v. Shriners Hospital for Crippled Children, 412 Mass. 469, 472 (1992), quoting Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 149-50 (1989). Redress has also been available to an at-will employee discharged in retaliation for his cooperation with a law enforcement investigation concerning his employer. Wright, 412 Mass. at 473, citing Flesner v. Technical Communications *514 Corp., 410 Mass. 805, 811 (1991). “Courts Eire hesitant, however, to create a new cause of action, only doing so when there is ‘no other way to vindicate such public policy.’ ” Bergeson v. Franchi, 783 F.Supp. 713, 717 (D.Mass. 1992), quoting, Melley v. Gillette Corp., 19 Mass.App.Ct. 511, 512 (1985), aff'd, 397 Mass. 1004 (1986). Therefore, “[w]here the legislature has already provided a remedy by enacting a comprehensive remedial statutory scheme, Massachusetts courts have not created a new, duplicative common law cause of action for a violation of public policy.” Id. at 718-19 citing, Melley, 19 Mass.App.Ct. at 513.
The plaintiffs claim for violation of public policy stems from her claim of sexual harassment. As discussed above, the Massachusetts Supreme Judicial Court has clearly articulated a public policy against sexual harassment in the workplace. College-Town, Div. of Interco, Inc. v. Massachusetts Comm’n against Discrimination, 400 Mass. 156, 162 (1987). In College-Town, the Court stated that a “work environment pervaded by harassment or abuse, with the resulting intimidation, humiliation, or stigmatization, poses a formidable barrier to the full participation of an individual in the workplace.” Id. at 162. “The Massachusetts legislature, as interpreted by the Supreme Judicial Court, has provided comprehensive schemes to remedy such harassment by enacting G.L.c. 151B and the Act." Bergeson, 783 F.Supp. at 718. See also, G.L.c. 214, §1C. Massachusetts courts will not create a new cause of action for a violation of public policy, however, “[i]f an existing remedial statute provides a means to vindicate such public policy.” Id. Since G.L.c. 151B and G.L.c. 214, §1C provide a remedial framework for handling sexual harassment claims, this Court will not create a new common law cause of action to redress the plaintiffs grievances. Id. Accordingly, summary judgment is allowed on Count II.
D. Count V - Infliction of Emotional Distress
In Count V, the plaintiff charges the defendants with intentional and negligent infliction of emotional distress. The defendants claim that any acts which form the basis of this claim occurred within the scope of the plaintiffs employment and, therefore, recovery is limited to the remedies provided by the workers’ compensation act.
In an action against an employer, mental distress arising out of the employment relationship is a personal injury compensable under the workers’ compensation act. Foley v. Polaroid. Corp., 381 Mass. 545, 550 (1980). Although the workers’ compensation act does not specifically include negligent infliction of emotional distress in its definition of “personal injury,” see G.L.c. 152, §1, the Massachusetts courts have held that the exclusiviiy provision of the workers’ compensation act does apply to claims for negligent infliction of emotional distress. See Catalano v. First Essex Savings Bank, 37 Mass.App.Ct. 377 (1994); Green v. Wyman-Gordon Co., 422 Mass. 551 (1996). If compensation for injuries from an infliction of emotional harm arising out of the employer-employee relationship is to be pursued in a common law action, there must first be a notice of intent to do so pursuant to G.L.c. 152, §24. “Otherwise, the exclusive remedy is as a workers’ compensation claim.” Mullen v. Ludlow Hospital Society, 32 Mass.App.Ct. 968, 970 (1992) (citations omitted). The plaintiff failed to provide the statutory notice. Therefore, the defendants move for summary judgment on this claim.
To the extent that the plaintiffs claim is against the defendants for committing an intentional and/or negligent tort which was within the scope of employment furthering the business interests, the plaintiffs claim is barred by the workers’ compensation act. However, as stated in O’Connell v. Chasdi, 400 Mass. 686, 690-91 (1987), a claim against a fellow employee who commits an intentional tort which is not related to the interests of the employer is not precluded by the exclusivity provision of the workers’ compensation act. The plaintiff alleges, in part, that Raymond Tamasi inflicted emotional distress by his angry and physically intimidating acts, i.e., throwing a telephone across the room on two occasions and pointing a gun at the plaintiff and asking her if she knew who was boss. “Liability for such intentional torts is not part of the circumstances of employment, unlike liability for negligently injuring others in the course of employment. Such intentional torts are not an accepted risk of doing business." Id. at 690-91. The issue of whether these allegations are true and, if true, whether the acts were negligent or intentional requires the taking of evidence and involves questions of malice, intent and motivation, issues appropriate for trial. Accordingly, summary judgment is denied on Count V.

ORDER

For the foregoing reasons, it is hereby ORDERED that the motion for summary judgment of Cape Cod Alcoholism Intervention and Rehabilitation Unit, Inc. d/b/a/ Gosnold on Cape Cod and Raymond Tamasi is DENIED on Counts I, III, IV and V; ALLOWED on Counts II, VI and VII.

During oral argument the defendants stated that when they told the plaintiff that insurance coverage would begin immediately upon employment, they mistakenly thought the ninety (90) day waiting period could be waived. However, it seems that any damages the plaintiff may have suffered as a result of the defendants’ alleged breach are now moot. The plaintiff did not need coverage during the ninety (90) day period and was reimbursed for the deductions taken from her salary during that time.

Viewing the summary judgment materials in favor of the plaintiff as the non-moving party, I conclude that the plaintiff was an at-will employee. The materials provide no evidence of a written contract or a claim that anyone ever stated that the plaintiff would be employed for a certain period of time.