Lauriat, J.
Paul Cuddi (“Cuddi”), a former employee of Kitchen, Etc., brought this action against Gallery Gift Shoppes, d/b/a Kitchen, Etc. (“Kitchen, Etc.”), Scott Michaud (“Michaud”), Edward Doherty (“Doherty”), Judith White (“White”), Judith May (“May”), Ron Mayly (“Mayly”), Robert Camp (“Camp”) and Darlene Taillon (‘Taillon”) (collectively, “the defendants”), alleging sexual harassment and sexual orientation discrimination, civil rights violations, retaliation, negligent and intentional infliction of emotional distress, and aiding and abetting, arising from a hostile work environment. The defendants have moved to dismiss certain counts of the complaint pursuant to Mass.R.Civ.P. 12(b)(2) and 12(b)(6). For the following reasons, the defendants’ motions are allowed in part and denied in part.
BACKGROUND
Cuddi was hired by Kitchen, Etc. as an assistant store manager in January 2000, and promoted to general manager of its retail store in Burlington, Massachusetts, in December 2001. Cuddi alleges that while he was employed at the Burlington store, defendants Michaud, White and Doherty, employees of Kitchen, Etc., subjected him to a hostile work environ *82 ment based on his sexual orientation. Specifically, Cuddi alleges that in May 2002, Doherty approached him in the back room of the store and stated, “this is what you called me back here for . . . this is what you want,” and proceeded to unbuckle his belt and unzip his pants. Cuddi also alleges that on another occasion that same month, defendant White came into the back room and said in the presence of Cuddi, Michaud and Doherty, “I heard a gay guy was screwing in the back room and I wanted to see how a gay guy screwed.” Cuddi alleges in his complaint that sexually harassing comments and conduct of this sort occurred on a daily basis at the Burlington store.
Cuddi further asserts that he reported the alleged harassing conduct to his supervisor, district manager Judith May, in June 2002. He alleges that shortly thereafter, May stated to Cuddi that he was losing control of the store because of his failure to report the harassment earlier. May then told Cuddi he would either be demoted and moved to a different retail store 80 miles away or he could resign. May also stated that Kitchen, Etc. had a “zero tolerance policy” for sexual harassment but failed to take any disciplinary actions against the employees who had allegedly harassed him. Cuddi decided to stay at the Burlington retail store but the harassment continued and on June 16, 2002, he contacted May and notified her of his resignation.
On October 31, 2002, Cuddi filed a complaint with the Massachusetts Commission Against Discrimination (“MCAD”) against Kitchen, Etc., describing these incidents. Approximately ninety days later, Cuddi removed the complaint from the MCAD. On March 25, 2003, Cuddi filed a 16-count complaint in this court.
The defendants have now moved to dismiss nine of the counts: Count II (violation of G.L.c. 12, §11I stemming from sexual harassment, against Kitchen, Etc.), Count IV (violation of G.L.c. 12, §111 based on sexual orientation, against Kitchen, Etc.); Count VI (negligent infliction of emotional distress, against Kitchen, Etc.); Count VII (intentional infliction of emotional distress, against Kitchen, Etc.); Count IX (aiding and abetting in violation of G.L.c. 15 IB, §4(5), against May, Taillion, Mayly and Camp); CountXI (violation of G.L.c. 12, §111 stemming from sexual harassment, against Michaud, White and Doherty); Count XII (intentional infliction of emotional distress, against Michaud, White and Doherty); Count XIII (reckless infliction of emotional distress, against Michaud, White and Doherty); and Count XV (violation of G.L.c. 12, §1II based on sexual orientation, against Michaud, White and Doherty).
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the well-pleaded factual allegations of the complaint, as well as any reasonable inferences which can be drawn therefrom in the plaintiffs favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Nader v. Citron, 372 Mass. 96, 98 (1977), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957). “[A] complaint is not subject to dismissal if it would support relief on any theory of law.” Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979).
I. Counts II, IV, XI and XV
The defendants contend that Counts II, IV, XI and XV, alleging violations of the Massachusetts Civil Rights Act, G.L.c. 12, §111 (“MCRA”), must be dismissed because Cuddi’s MCRA claims are preempted by Cuddi’s identical claims under G.L.c. 151B, and because the alleged harassing conduct by the defendant coworkers does not as a matter of law constitute threats, intimidation or coercion as required under MCRA.
A.
The defendants first contend that Counts II, IV, XI and XV are preempted by Cuddi’s identical claims under G.L.c. 15 IB. Specifically, they assert that G.L.c. 15 IB, §9 provides the exclusive remedy for employment discrimination actions. Section 9 of chapter 15 IB provides, in relevant part, that, “as to acts declared unlawful by section four, the procedure provided in this chapter shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned.”
Whether a plaintiff who satisfies the procedural requirements of G.L.c. 15 IB may thereafter assert an action in court under other statutes has not been expressly decided by the Supreme Judicial Court and is the subject of significant debate.[1] This court has held that where a plaintiff satisfies the requirements of G.L.c. 151B, he may thereafter proceed to bring an action in the Superior Court under other relevant statutes. DeBarboza v. Cablevision of Boston, Inc., Civil No. 98-4244 (Lauriat, J.) (Super.Ct. Jan. 29, 1999) (9 Mass. L. Rptr. 539); O’Brien v. Avis Rent A Car System, Inc., Civil No. 96-5501 (Lauriat, J.) (Super.Ct. May 1, 1997) (6 Mass. L. Rptr. 567); see also Jancey v. School Committee of Everett, 421 Mass. 482, 497 (1995); Charland v. Muzi Motors, Inc., 417 Mass. 580, 586 (1994); Clarke v. Kentucky Fried Chicken of California, Inc., 57 F.3d 21, 25 (1st Cir. 1995). The defendants have not disputed that Cuddi has met the administrative requirements of c. 151B. Therefore defendants’ motion to dismiss Counts II, IV, XI and XV on the ground that they are preempted by G.L.c. 151B is denied.
B.
The defendants have also moved to dismiss Counts II, IV, XI and XV on the ground that Cuddi cannot show a violation of MCRA because the defendants’ actions *83 could not amount to interference or an attempt to interfere with Cuddi’s rights by “threats, intimidation or coercion.” G.L.c. 12, §§11H and 11I. Specifically, they assert that “threats, intimidation or coercion,” under MCRA must involve actual or potential physical confrontations involving threat of harm.
The defendants are correct that the Supreme Judicial Court has repeatedly interpreted the phrase, “threats, intimidation or coercion,” to occur in cases of actual or potential physical confrontations involving threat of harm. Planned Parenthood League v. Blake, 417 Mass. 467, 473 n.8 (1994); Layne v. Supt. Mass. Correctional Inst, Cedar Junction, 406 Mass. 156, 158 (1989). However, the Court has made clear that in interpreting the word “coercion,” it does not limit its scope to actual or attempted physical force. Buster v. George W. Moore, Inc., 438 Mass. 635, 646 (2003) (economic coercion alone may be actionable under MCRA). Rather, coercion can include either physical or moral force which constrained the plaintiff to “do against his will something he would not otherwise have done.” Id.
Cuddi charges in Counts II and IV of his Complaint that defendant Kitchen, Etc. failed to protect him from the alleged harassment with proper training or other management efforts. He does not claim in his complaint that Kitchen, Etc. itself targeted a “direct assault” at him. See Bally v. Northeastern Univ., 403 Mass. 713, 719 (1989). Accepting as true Cuddi’s allegation that Kitchen, Etc. failed to properly train or manage its employees to protect him from sexually harassing and discriminating conduct, this failure does not involve actions rising to the level of threats, intimidation or coercion under MCRA. See Longval v. Comm’r of Correction, 404 Mass. 325, 333 (1989). Therefore, Cuddi’s MCRA claims against Kitchen, Etc. must fail as a matter of law.
Cuddi also charges MCRA violations against defendants Michaud, White and Doherty in Counts X and XV. Specifically, he describes two incidents: the first in which defendant Doherty approached him in the back room of the store and unbuckled his belt and unzipped his pants stating, “this is what you called me back here for . . . this is what you want,” and the second when defendant White came into the back room and said in the presence of Cuddi, Michaud and Doherty, “I heard a gay guy was screwing in the back room and I wanted to see how a gay guy screwed.” Cuddi also asserts that sexually harassing comments and conduct of this sort occurred on a daily basis. The defendants urge this court to dismiss this claim because, like the claim against Kitchen, Etc., these instances do not rise to the level of threatening, intimidating, or coercive conduct under MCRA as interpreted by the Supreme Judicial Court.
The Supreme Judicial Court noted in Buster that sexual harassment can rise to the level of “coercion” within the meaning of MCRA where the harassment makes it impossible for a victim to continue her employment. 438 Mass, at 647. However, the Court specifically pointed to a case in which a supervisor repeatedly and aggressively made clear that an employee’s job was in jeopardy if she did not accede to his overt sexual advances. O’Connell v. Chasdi, 400 Mass. 686, 694 (1987). In contrast, Cuddi does not allege the defendants physically threatened him or that the defendants exerted any force, physical or moral, which constrained him to “do against his will something he would not otherwise have done.” See Buster, 438 Mass, at 646.
Accordingly, the court concludes that these incidents do not rise to the level of threatening, intimidating, or coercive acts actionable under the MCRA, and the defendants’ motion to dismiss Counts II, IV, X and XV is allowed.
II.
Counts VI and VII of the Complaint charge defendant Kitchen, Etc. with negligent and intentional infliction of emotional distress. Counts XI and XII charge defendants Michaud, White and Doherty with intentional and reckless infliction of emotional distress. The defendants have moved to dismiss these claims on the ground that they are barred by the Workers’ Compensation Act. G.L.c. 152, §24.
It is well settled law that actions for negligent and intentional infliction of emotional distress against an employer are barred by the exclusivity clause of the Workers’ Compensation Act. G.L.c. 152, §24; Green v. Wyman-Gordon Co., 422 Mass. 551, 558 (1996); Brown v. Nutter, McClennen & Fish, 45 Mass.App.Ct. 212, 214-15 (1998). Cuddi concedes this point in his brief. Accordingly, the defendants’ motion to dismiss Counts VI and VII is allowed.
Counts XI and XII of the complaint, in contrast, allege intentional and reckless infliction of emotional distress by the individual employees, Michaud, White and Doherty. The defendants likewise contend that these claims are barred by the Workers’ Compensation Act.
Suits against individual employees are barred by the Workers’ Compensation Act only if their conduct was within the scope of employment. Anzalone v. Massachusetts Bay Transportation Authority, 403 Mass. 119, 124 (1988); O’Connell 400 Mass, at 690. If a fellow employee commits an intentional tort not related to the interests of the employer, the policies behind the Workers’ Compensation Act would not be served by immunizing the co-employee. O’Connell, 400 Mass, at 690. Accordingly, in order for defendants Michaud, White and Doherty to be protected by the exclusivity provision of the Workers’ Compensation Act, they would need to have been acting within the scope of their employment to further the interest of Kitchen, Etc. when they committed the alleged harassing conduct. See Anzalone, 403 Mass, at 124-25 (hold *84 ing exclusivity provision barred claim of intentional infliction of emotional distress where complained-of conduct related wholly to defendant’s position as plaintiffs supervisor and the manner in which he exercised his supervisory duties).
Accepting as true the factual allegations of the Complaint, as well as any reasonable inferences which can be drawn therefrom in Cuddi’s favor, the actions and comments of defendants Doherty, White and Michaud were not done or said in the course of their employment by, or in furtherance of the interests of Kitchen, Etc. The defendants’ motion to dismiss Counts XII and Xtll is denied.
III.
The defendants next contend that this court should dismiss either Count XII (intentional infliction of emotional distress) or Count XIII (reckless infliction of emotional distress) because there is no cognizable distinction between the two torts and the claims are redundant. The court agrees.
The elements for reckless infliction of emotional distress and intentional infliction of emotional distress are identical. Bowman v. Heller, 420 Mass. 517, 519 n.2 (1995). The Supreme Judicial Court has regularly lumped the two named torts together, referring to the tort as, “intentional or reckless infliction of emotional distress.” See, e.g. Bowman, 420 Mass, at 519; Nancy P. v. D’Amato, 401 Mass. 516, 520 (1988); Agis v. Howard Johnson Co., 371 Mass. 140, 143 (1976); see discussion in Tilton v. Town Of Franklin, 24 Mass.App.Ct. 110, 112 (1987). Because the tort of intentional infliction of emotional distress is the same as the tort of reckless infliction of emotional distress and both claims are brought against the same defendants for the same set of facts, the court will dismiss Count XIII (reckless infliction of emotional distress) and allow Cuddi to proceed with Count XII (intentional infliction of emotional distress).
IV.
The defendants have also moved to dismiss Count IX against defendants May, Taillion, Mayly and Camp for Cuddi’s failure to first file a charge of discrimination with the MCAD under the specific requirements of G.L.c. 151B. The defendants argue that because Cuddi’s MCAD charge named only one respondent, Kitchen, Etc., Cuddi’s action against the individual defendants in this court must fail.
Massachusetts law requires that a discrimination action under G.L.c. 151B be preceded by a charge filed with the MCAD within six months of the discriminatory conduct. G.L.c. 151B, §5. Regulations promulgated by the MCAD under G.L.c. 151B require that the charge contain, “appropriate identification of the Complaints) and the person(s) alleged to have committed unlawful discriminatory acts.” 804 C.M.R. § 1.10(5)(d). The purpose of the filing requirement is to provide defendants with notice of a potential suit and an opportunity to investigate and conciliate the claim of discrimination. Carter v. Commissioner of Correction, 43 Mass.App.Ct. 212, 217 (1997). Failure to file a charge with the MCAD bars recovery in a subsequent judicial action. Andrews v. Arkwright Mut. Ins. Co., 423 Mass. 1021 (1996). Although the Massachusetts appellate courts have not specifically decided this issue, the U.S. District Court, in interpreting Massachusetts law, concluded that a subsequent civil action would not be precluded if the individual party’s conduct was put in issue by the MCAD charge and he had notice of and an opportunity to conciliate the charge. Chatman v. Gentle Dental Center of Waltham, 973 F.Supp. 228, 235 (D.Mass. 1997).
The MCAD charge here does not reference by name or title chief executive officer Robert Camp, vice president Ron Mayly, or benefits administrator Darlene Taillion, and therefore they had no notice or opportunity to conciliate the charge. Furthermore, while the charge describes the involvement of defendant May, it does not directly accuse her of engaging in the allegedly harassing or discriminatoiy conduct such that she would have sufficient notice or opportunity to conciliate the charge, especially where the charge named as defendant only Kitchen, Etc. May did not attend MCAD conciliation meetings or file affidavits with the MCAD. See Lawler v. Malden Housing Authority, Civil No. 98-2025 (Super.Ct. Oct. 20, 1998) (Dortch-Okara, J.) (9 Mass. L. Rptr. 491); Kuketz v. MDC Fitness Corp., Civil No. 98-0114 (Super.Ct. August 10, 1998) (Chin, J.) (9 Mass. L. Rptr. 261). As such, there is no evidence that May should have had or did have notice of the charge or opportunity to conciliate.
Therefore, the defendants’ motion to dismiss Count IX against the individual defendants is allowed. Because this count is dismissed against defendants May, Taillion, Mayly and Camp, it is unnecessary for the court to reach or determine their motion to dismiss of defendants Camp and Taillion, pursuant to Mass.R.Civ.P. 12(b)(2), for lack of personal jurisdiction over them.
ORDER
For the foregoing reasons, the Defendants’ Motion to Dismiss Pursuant to MRCP 12(b)(6) is ALLOWED as to Counts II, IV, VI, VII, IX, XI, XIII and XV, and is DENIED as to Count XII. The Defendant Robert Camp’s and Darlene Taillon’s Joint Motion to Dismiss Pursuant to MRCP 12(b)(2) is DENIED as moot.

 The debate over this issue appears to be primarily in the Superior Court. See discussion in Rowe v. Town of North Reading, Civil No. 98-4216 (Super.Ct. Jan. 5, 2001) (Houston, J.).