**Zygmunt CHOROSZY and Denson Hudgens, Plaintiffs,**

v.

**WENTWORTH INSTITUTE OF TECHNOLOGY, Defendant.**

**Civil Action No. 95–11138.**

United States District Court, D. Massachusetts.

Jan. 22, 1996.

Kevin G. Powers, Boston, MA, for Zygmunt Choroszy.

Paul G. Lannon, Nutter, McClennen & Fish, Boston, MA, for Denson Hudgens.

Sharon R. Burger, Paul G. Lannon, Nutter, McClennen & Fish, Boston, MA, for Wentworth Institute of Technology.

### MEMORANDUM AND ORDER

O'TOOLE, District Judge.

Zygmunt Choroszy and Denson Hudgens, former security guards at the Wentworth Institute of Technology ("Wentworth"), have sued Wentworth on a variety of state and federal claims related to events that occurred at their place of employment. Wentworth moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Hudgens' claim regarding negligent supervision, while Hudgens moves to add an additional claim against Wentworth for sexual harassment. The Court now grants Wentworth's motion to dismiss and, finding that Hudgens' proposed addition would not state a valid claim either, denies the motion to amend.

### I. FACTS

■ For the purposes of these motions, the Court accepts as true all the facts stated in the plaintiffs' complaint. *Washington Legal Found. v. Massachusetts Bar Found.*, 993 F.2d 962, 971 (1st Cir.1993). The complaint indicates that Hudgens worked for Wentworth as a security officer beginning in 1990. In June 1990, Hudgens witnessed a group of fellow officers harassing another officer whom they believed to be homosexual. Hudgens spoke out against the harassment, whereupon the other officers turned on him and even, on one occasion, threatened him with violence. Once, an officer drew his service revolver, pointed it at Hudgens, and stated, "I should kill you, you're a faggot." Hudgens complained about these events several times to the director of security, Kevin Moore. Moore failed to take any appropriate action. Hudgens claims that as a result of Moore's failure to supervise and discipline the other officers properly, Hudgens was further harassed and threatened. Additionally, although the complaint does not elucidate the causal connection, Hudgens avers that Moore's inaction led Moore to terminate Hudgens' employment.

Choroszy's tenure at Wentworth apparently followed a similar pattern. Choroszy initially incurred the displeasure of his coworkers by speaking out when they called Hudgens a "faggot." Thereafter, he was repeatedly insulted because of his Polish and supposed Jewish background (Choroszy is of Polish descent but is not Jewish). Like Hudgens, Choroszy reported these personal attacks to Moore to no avail. Choroszy also refused to sign an affidavit at Moore's request stating that Hudgens had violated Wentworth's policy regarding computer use. In the end, Choroszy decided he could no longer endure the work environment because of the emotional and physical distress it caused him and resigned, a resignation Choroszy considers a constructive discharge.

Choroszy and Hudgens jointly filed suit in state court pursuant to Massachusetts statutory and common law and "Title VII of the Civil Rights Act of 1964 29 USC 6000E." [1] On the basis of this federal claim, Wentworth removed the case to federal court pursuant to 28 U.S.C. §§ 1331 and 1441(b).

### II. DISCUSSION

#### A. *Jurisdictional Issues*

■ Although addressed by neither party, there lurks in the background of this case a quasi-jurisdictional question regarding the presence of Hudgens' claims in a federal court. Unlike Choroszy, Hudgens has asserted no federal cause of action against Wentworth; his action, as stated in the complaint, is based solely on Massachusetts common law. Ordinarily, supplemental jurisdiction would suffice to keep Hudgens in federal court, if his claim was so related to Choroszy's "that they form part of the same case or controversy." 28 U.S.C. § 1367(a). These plaintiffs' claims, however, have only a

---

1. There is no 29 U.S.C. § 6000E, although both the plaintiffs and the defendant refer to it in their papers. Presumably, the parties mean 42 U.S.C. § 2000e.

**450**

limited relation to one another; except for a common defendant and somewhat similar fact patterns, Choroszy's and Hudgens' claims are based on completely different legal theories and, for the most part, alleged action and inaction on behalf of the defendant. This separateness has led the Court to wonder whether it should, on its own initiative, sever the claims pursuant to Fed. R.Civ.P. 21 and then dismiss Hudgens' claim for lack of jurisdiction. Indeed, given the plaintiffs' initial desire to sue in state court, it would appear that Hudgens, had he so desired, could easily have accomplished as much on his own motion. Nonetheless, the collection of operative facts are sufficiently common for the purposes of Fed.R.Civ.P. 20(a) that, when coupled with the interest in judicial economy, the Court concludes it has an adequate basis for jurisdiction over Hudgens' state law claims and will resolve the motions presented.

### B. Wentworth's Motion to Dismiss Hudgens' Claims

■ Initially, Hudgens' complaint appeared to include claims under both Massachusetts common law and Mass.Gen.L. ch. 151B for discrimination in employment. *See* Complaint ¶ A. ("This case is brought pursuant to Massachusetts General Law 151B, ... All conditions to jurisdiction under 151B have been met."). Wentworth has pointed out in its motion to dismiss that Hudgens did not allege facts indicating compliance with the procedural requirements for bringing a chapter 151B suit, namely, that a complaint had been filed with the Massachusetts Commission Against Discrimination ("MCAD") within six months of the alleged discrimination or retaliation. *See* Mass.Gen.L. ch. 151B, § 5. In his opposition memorandum, Hudgens does not deny this failure to comply with chapter 151B but instead asserts that he has a valid claim against Wentworth under Massachusetts common law. Accordingly, the Court will assume that Hudgens has

waived his chapter 151B arguments and relies solely on state common law.

■ Hudgens' common law claim is based on the tort of "negligent hiring, retention, and supervision." *See Foster v. The Loft, Inc.*, 26 Mass.App. 289, 526 N.E.2d 1309, 1310–11 (1988). On Hudgens' theory, Wentworth negligently failed to discipline or dismiss his abusive co-workers, and that negligence proximately caused his dismissal. This theory of recovery is itself somewhat troublesome; this Court could locate no cases under Massachusetts law in this century in which any federal or state court applied this tort to an employee's suit against his employer.[2] Indeed, most statements of the tort appear to state the duty as running to members of the public and not to the employees themselves. *See id.;* 1 Stuart M. Speiser et al., *The American Law of Torts* § 4:11 (Lawyer's Co-operative 1985 & 1995 Supp.) (discussing tort of negligent supervision but nowhere mentioning employees as persons to whom duty may be owed). That lacuna may be the result of the workers' compensation statute rather than any studied objection to the imposition of liability on an employer for employee-on-employee misconduct. *See Bresnahan v. Barre*, 286 Mass. 593, 190 N.E. 815, 816 (1934); *see also Bruni v. United States*, 964 F.2d 76 (1st Cir.1992) (holding that plaintiffs could only sue government on behalf of deceased postal employee killed by another under Federal Employees Compensation Act and not Federal Tort Claims Act); *Missouri, K & T Ry. Co. of Texas v. Day*, 104 Tex. 237, 136 S.W. 435 (1911) (permitting suit by employee against railroad for negligently employing and retaining a co-worker who assaulted him); 3 Stuart M. Speiser, *The American Law of Torts* § 9:92 (Lawyers Co-Operative 1986). After all, employees are often required to trust their safety to their co-workers, and employers are usually in a better position to know and monitor how these other employees will behave than any

**2.** Hudgens identifies *Copithorne v. Framingham Union Hosp.*, 401 Mass. 860, 520 N.E.2d 139 (1988), as a case on point. In *Copithorne*, a hospital employee was permitted to sue the hospital under a negligent hiring theory when a doctor engaged by the hospital as an independent contractor drugged and raped her while

treating her as a patient. However, the employee was not acting within the course of her employment when attacked, and the duty owed her depended more on her status as a patient than as an employee. *See also Husband v. Dubose*, 26 Mass.App. 667, 531 N.E.2d 600, 602 (1988) (distinguishing *Copithorne* ).

one employee. Furthermore, an employer does have a common law obligation to provide an employee with a safe place to work. *Di Bari v. J.W. Bishop Co.*, 199 Mass. 254, 85 N.E. 89 (1908). Dictum in an even earlier Massachusetts case states that "the master could not be made liable to [a servant] for such an injury resulting from the fault of the fellow-servants, unless the master had himself been guilty of negligence in selecting or employing them." *Osborne v. Morgan*, 130 Mass. 102, 104 (1881). *See also id.* at 105 ("Even the master is not exempt from liability to his servants for his own negligence. . . ."); *Di Bari*, 85 N.E. at 90 ("If a master knowingly employs servants who are incompetent by reason of their habits or otherwise he is liable for an injury occasioned to a fellow servant by their incompetency just as he would be liable for an injury caused by a defective machine."). Passing the point, this Court will assume that Massachusetts courts would recognize a negligent supervision action by an employee against his employer.

 Nevertheless, Hudgens' claim falters on several other grounds. First, the Massachusetts Supreme Judicial Court has held "that, where applicable, G.L. c. 151B provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections, and that the . . . failure to adhere to the requirements of G.L. c. 151B require[s] the dismissal of [the] complaint." *Charland v. Muzi Motors, Inc.*, 417 Mass. 580, 631 N.E.2d 555, 559 (1994); *see also Comey v. Hill*, 387 Mass. 11, 438 N.E.2d 811, 817 (1982). The fact that Hudgens describes what he suffered as damages flowing from negligent supervision rather than from employment discrimination does not change the essence of his claim, which he originally characterized as a discrimination claim. *See Woods v. Friction Materials, Inc.*, 30 F.3d 255, 264 (1st Cir.1994); *Mouradian v. General El. Co.*, 23 Mass.App. 538, 503 N.E.2d 1318, 1320–21, *review denied*, 399 Mass. 1105, 507 N.E.2d 1056 (1987).

 Second, even assuming that he can escape the chapter 151B exclusivity bar, Hudgens still has not stated a cognizable claim for anything. Hudgens was an at-will employee of Wentworth, and Massachusetts employers may terminate at-will employees at any time for virtually any reason or even no reason at all. *Whelan v. Intergraph Corp.*, 889 F.Supp. 15, 19 (D.Mass.1995); *Bergeson v. Franchi*, 783 F.Supp. 713, 717 (D.Mass.1992); *Fortune v. Nat'l Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251, 1255 (1977). Massachusetts courts have recognized claims for breach of the covenant of good faith and fair dealing in employment-at-will contracts. *Coll v. PB Diagnostic Systems, Inc.*, 50 F.3d 1115, 1125 (1st Cir.1995); *Whelan*, 889 F.Supp. at 19, *Cort v. Bristol–Myers*, 385 Mass. 300, 431 N.E.2d 908, 910 (1982). Thus, exceptions to the general rule have developed where the employer is benefitting unjustly from the termination by withholding future wages for past services, *see Bergeson*, 783 F.Supp. at 717; *Fortune*, 364 N.E.2d at 1256; and where the method of termination violates a clearly established public policy, usually where there is "no other way to vindicate such public policy." *Bergeson*, 783 F.Supp. at 717 (quoting *Melley v. Gillette Corp.*, 19 Mass.App. 511, 475 N.E.2d 1227 (1985), *aff'd*, 397 Mass. 1004, 491 N.E.2d 252 (1986). Neither variety of exception applies here. Hudgens' discharge, even if the product of negligent supervision, is not an injury cognizable in tort law. *Cf. Restatement (Second) of Torts* § 317 (1965) (duty of master to control conduct of servant extends to creating an "unreasonable risk of bodily harm" to others); *Id.* at § 411 (negligence in selection of contractor only creates liability where it causes physical harm to third persons).

If, on the other hand, the wrongful discharge was improper because of the underlying discrimination Wentworth failed to do anything about, Hudgens is once more faced with the exclusivity of the chapter 151B remedy. Hudgens responds by pointing to a series of cases where parallel claims were brought alongside a chapter 151B claim. In each of these, however, the plaintiffs stated a tort that was truly independent of the discrimination itself. *See, e.g., Bergeson*, 783 F.Supp. at 716–17 (intentional infliction of emotional distress); *Egger v. Local 276, Plumbers & Pipefitters Union, AFL–CIO,*

**452**

644 F.Supp. 795, 805 (D.Mass.1986) (intentional infliction of emotional distress); *Copithorne v. Framingham Union Hosp.*, 401 Mass. 860, 520 N.E.2d 139 (1988) (negligent supervision of doctor who raped employee). Here, Hudgens' entire argument hinges on discrimination in the workplace; without reference to that allegation there is nothing putatively wrongful about what happened to him. Furthermore, in none of the separate-tort cases did the plaintiffs ever recover damages for the discharge itself.

■ Third, even if Hudgens' claim is construed as a valid and separate tort, the workers' compensation statute would bar his claim. Massachusetts workers' compensation law prevents an employee from bringing common-law tort claims against his employer for work-related injuries unless the employee has reserved his right to do so. Mass.Gen.L. ch. 152, § 24. Hudgens' alleged injury occurred in the course of his employment, and he has not alleged that he opted out of the workers' compensation system in order to preserve his common law rights. *Cf. Egger*, 644 F.Supp. at 805–06 (finding no bar under § 24 because the plaintiff was not an "employee" of the defendant labor union within the context of the statute).

Both state and federal case law foreclose Hudgens' action on this point. In *Catalano v. First Essex Sav. Bank*, 37 Mass.App. 377, 639 N.E.2d 1113, *review denied*, 419 Mass. 1101, 644 N.E.2d 225 (1994), the Massachusetts Appeals Court noted that § 24 barred independent tort claims for negligent infliction of emotional distress regardless of whether the distress arose from a bona fide personnel action. Thus, a complaint alleging an emotional disability arising out of a "daily 'campaign' of harassment" by a co-worker, "of which her employer was on notice but failed to take steps to prevent," had to be brought under the Workers' Compensation Act. *Id.* 639 N.E.2d at 1116.

The First Circuit, relying on *Catalano* as "persuasive, reasoned dicta," concluded that Mass.Gen.L. ch. 152, § 24 preempted any remedy for common law tort claims. *Clarke v. Kentucky Fried Chicken of Cal., Inc.*, 57 F.3d 21 (1st Cir.1995). In that case, Clarke, much like Hudgens here, sought recovery under a theory of negligent hiring, supervising, and retaining because of on-the-job harassment that ultimately led her to quit. The *Clarke* court concluded that § 24 "effectively preempted a broad range of civil actions based on employment-related emotional injury," and that "it would strain credulity and common sense to presume that the Legislature chose to limit employers' collective liability under the workers' compensation scheme, only to expose individual employers to greater liability in common law negligence suits based on bona fide personnel actions." *Id.* at 29; *see also Galdauckas v. Interstate Hotels Corp. No. 16*, 901 F.Supp. 454, 469 (D.Mass.1995) (following *Clarke*).

Hudgens relies on *Foley v. Polaroid Corp.*, 381 Mass. 545, 413 N.E.2d 711 (1980), for the proposition that his tort claim against his employer is not barred. In that case, Foley sued his employer for malicious prosecution, injury to reputation, civil rights violations, and infliction of severe emotional distress and physical injury after the employer accused him of raping a co-worker. The *Foley* court dismissed his claims for emotional distress relative to the rape charges but permitted his claims for malicious prosecution, injury to reputation, and civil rights violations to go forward. *Foley*, 413 N.E.2d at 715–16. In so doing, the court distinguished between mental and physical injuries compensable under the workers' compensation statute and barred by § 24 with those that sought vindication of more intangible rights not properly classified as a personal injury. *Id.*; *see also Felinska v. New England Teamsters and Trucking Indus. Pension Fund*, 855 F.Supp. 474, 478–79 (D.Mass.1994) (following *Foley*). Whatever escape path *Foley* might provide certain claims, Hudgens' complaint does not pursue that course. He alleges injury based on his termination and possibly on the distress his co-workers' harassment (as tolerated and fostered by Wentworth) caused him. Unlike Foley's claims, Hudgens' are firmly grounded in the sorts of personal injury for which § 24 bars recovery outside of the workers' compensation framework. *See Sarocco v. General Elec. Co.*, 879 F.Supp. 156, 160–61 (D.Mass.1995) (*Foley* offers no relief where a misrepresentation claim sought to

recover only for "personal injuries compensable under the workers' compensation scheme"). Even if the issue were closer under *Foley*, the First Circuit's decision in *Clarke* would not permit this Court to decide the present case otherwise.

■ A complaint should only be dismissed when it appears "that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). That criterion is clearly met in this case.

### C. *Hudgens' Motion to Amend*

■ Conscious, perhaps, of his pleaded complaint's precarious hold on viability, Hudgens also moves to amend the complaint to add a claim for sexual harassment under Mass.Gen.L. ch. 214, § 1C.[3] According to the proposed amendment, another of Hudgens' supervisors repeatedly directed crass and sexually suggestive remarks at him. Hudgens supposedly reported these to Moore, who did not act to stop them. Hudgens contends that this harassment, coupled with Wentworth's failure to remedy it, also led to his dismissal.

■ A decision to allow an amendment to a complaint lies within the discretion of the court. *Resolution Trust Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir.1994). Fed.R.Civ.P. 15(a) states that leave to amend a pleading "shall be freely given when justice so requires." Here, Wentworth correctly replies that amendment here should be denied because it would be a futile effort; Hudgens cannot recover on the additional count as a matter of law. *Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790, 792 (1st Cir.1995).

■ The First Circuit recently decided this precise issue in *Clarke*. Relying on the Massachusetts Supreme Judicial Court's ("SJC") opinion in *Charland v. Muzi Motors,*

*Inc.*, 417 Mass. 580, 631 N.E.2d 555 (1994), the Court held that any claim of sexual harassment in the workplace must be brought pursuant to the procedures of Mass. Gen.L. ch. 151B. *Clarke*, 57 F.3d at 24–27. Where chapter 151B applies, it requires exhaustion of administrative remedies, something Hudgens has not done. Section 1C does not create a parallel remedial path for those aggrieved by sexual harassment in the workplace; it merely vests jurisdiction in a specific court once claims have been administratively exhausted. *Id.; Charland*, 631 N.E.2d at 558; *see also Johnson v. Plastic Packaging, Inc.*, 892 F.Supp. 25, 31 (D.Mass. 1995) (following *Clarke*). Hudgens does not assert that he timely filed and pursued a claim with the MCAD. The proposed amendment thus fails to state a claim upon which relief could be granted.

■ Hudgens replies that this very issue is currently before the Massachusetts Supreme Judicial Court in two other cases, and that the First Circuit has delayed its decision whether to rehear *Clarke* en banc pending the disposition of these cases. Nonetheless, the First Circuit has not withdrawn its opinion in *Clarke*, and that opinion consequently remains binding precedent.[4] Since the amended complaint would not state a claim under Massachusetts law as interpreted in the First Circuit, the motion to amend must be denied.

For the foregoing reasons, Hudgens' motion to amend the complaint is DENIED, and Wentworth's motion to dismiss Hudgens' action is GRANTED.

SO ORDERED.

---

**3.** Section 1C provides: "A person shall have the right to be free from sexual harassment, as defined in chapter one hundred and fifty-one B and one hundred and fifty-one C. The superior court shall have the jurisdiction in equity to enforce this right and to award damages."

**4.** For the same reason, the Court denies Hudgens' request to certify a question to the Supreme Judicial Court regarding the issue. *See Bi–Rite Enter. v. Bruce Miner Co., Inc.*, 757 F.2d 440, 443 n. 3 (1st Cir.1985) (noting that "it is inappropriate for a federal court to use such a procedure when the course state courts would take is reasonably clear").