Wernick, J.
Plaintiff Ellen L. Patriarca (“Patriarca”) filed this wrongful termination action against her former employer, the Center for Living and Working, Inc. (“CLW”), and individual board members of CLW. The defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted. For the following reasons, the motion to dismiss is allowed in part and denied in part.
BACKGROUND
The following facts, taken from the plaintiffs complaint, are accepted as true for purposes of the motion to dismiss.
The CLW is a corporation which administers funding for personal care services for disabled persons in cooperation with the Massachusetts Division of Medical Assistance. Patriarca was employed with the CLW for approximately nine years as a registered nurse. Her duties at CLW included evaluating the personal health care needs of individuals and recommending services to be provided to those individuals. The CLW received a fee from the Massachusetts Division of Medical Assistance for each evaluation performed by Patri-arca, and also received a processing fee for administering funds for services.
In or about 1997, defendant Robert Bailey, a member of CLW’s Board of Directors, repeatedly asked Patriarca to perform evaluations for individuals who were not eligible for services. Bailey also asked Patri-arca to falsify records and make other misrepresentations to the Division of Medical Assistance. Patriarca refused Bailey’s repeated requests.
In August of 1998, Bailey informed Patriarca that CLW intended to hire additional registered nurses to *487 perform the tasks Patriarca had been performing. On August 10, 1998, Patriarca submitted her resignation.
DISCUSSION
The defendants seek dismissal of the complaint for failure to state a claim upon which relief can be granted. When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the Court must accept as true the allegations of the complaint, as well as any reasonable inferences to be drawn from them in the plaintiffs favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991), and cases cited. A “complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). “[A] complaint is not subject to dismissal if it could support relief on any theory of law.” Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979).
The defendants advance numerous arguments in support of dismissal; this Court will address each count in turn.
A. Count I — Breach of Contract
In her complaint, Patriarca alleges that CLW breached a contract with her as established by its employment manual; specifically, Patriarca contends that statements in the CLW’s “Personnel Policies Manual” imposed an affirmative duty upon CLW, its employees and directors to maintain high ethical standards, a duty that was breached when Bailey pressured Patriarca to engage in criminal conduct. The defendants argue that Count I must be dismissed, as an aspiration to high ethical standards in an employee handbook cannot be construed as an enforceable contract.
In the absence of a contract specifying a definite term of duration, employment is presumed to be at-will and “is terminable by either the employee or employer without notice for almost any reason or for no reason at all.” Jackson v. Action for Boston Community Development, Inc., 403 Mass. 8, 9 (1988). In some cases, a personnel manual may form the basis of a contract for employment. Id. at 13-15. Factors that may be considered in determining whether a contract based on an employee manual exists are: (1) whether the employer retained the right unilaterally to modify the manual; (2) whether the manual provided “guidance” as to the employer’s policies; (3) whether there were negotiations over the terms of the manual; (4) whether a term of employment was stated in the manual; and (5) whether the defendant cahed special attention to the manual, such as by making employees sign it. See Jackson at 13-15 (1988); O'Brien v. New England Telephone & Telegraph Company, 422 Mass. 686 (1996).
Section 5.7 of CLW’s employment policies manual is entitled “Employee Conduct.” That section states that “[h]onesty, integrity, and personal responsibility are the foundation of CLW’s operating principles. When these principles are violated, the agency has an obligation to deal directly and consistently with the offenders____IN GENERAL EMPLOYEES CAN ANTICIPATE THAT ACTIONS HARMFUL TO ANOTHER EMPLOYEE OR TO THE AGENCY AND/OR CONSUMER ARE CAUSE FOR DISCIPLINARY ACTION OR IMMEDIATE TERMINATION.” (Emphasis added.) The conduct section goes on to state that employees will not:
misuse or misappropriate agency assets or steal from the agency, its consumers, business associates, or employees;
steal, commit or attempt to commit fraud or theft against the agency, another employee or consumer;
intentionally falsify any agency record or report.
(Personnel Policies Manual at p. 27-28.)
Patriarca contends in her complaint that Bailey violated the provisions of the employee conduct section and that CLW was aware or should have been aware of his conduct, yet failed to take disciplinary action against him. Based on CLW’s statement that it is obligated to deal with employees who violate these rules and that employees can anticipate that disciplinary action will be taken against fellow employees who engage in conduct harmful to employees or to the agency, an implied contract may have been estab-kshed between it and its employees. Although a host of other factual considerations may eventually militate against a finding that a contract existed, such as whether Patriarca complied with the reporting provisions contained in the section of the manual that she wishes to enforce and that Patriarca signed a form acknowledging that she was aware that CLW could unilaterally alter the pokcies at any time and that the terms of the manual did not create a contract of employment, those factual considerations are not appropriately considered on a motion to dismiss. At this stage, Patriarca has sufficiently stated a claim for breach of contract based on the employee code section of CLW’s Personnel Policies Manual.
B. Count II — Breach of the Impked Covenant of Good Faith and Fair Dealing
Patriarca contends that CLW breached the impked covenant of good faith and fair dealing by terminating her for her refusal to commit a criminal act. This Court finds that although the facts supporting Count II do not support a claim for breach of the impked covenant of good faith and fair dealing,[2] Patriarca does state a claim for wrongful termination in violation of pubkc policy.
While “(t]he general rule is that an at-wik employee may be terminated at any time for any reason or for no reason at all . . . [liability may be imposed on an employer ... if an at-will employee is terminated for a *488 reason that violates a clearly established public policy.” Upton v. JWP Businessland, 425 Mass. 756, 757 (1997). Where an employee is discharged for asserting a legally guaranteed right or for refusing to commit an illegal act, the employee may maintain an action against the employer for wrongful termination. “Redress is available for employees who are terminated . . . for refusing to do that which the law forbids . . .” Smith-Pfeffer v. Superintendent of the Walter E. Fernald State School, 404 Mass. 145, 149-50. See also, Wright v. Shriners Hospital for Crippled Children, 412 Mass. 469, 472-75 (1992).
Patriarca’s complaint alleges that she was constructively discharged after she refused her supervisor’s repeated requests to submit fraudulent claims.[3] Such facts adequately state a claim for wrongful termination in violation of public policy.
C. Count hi — Tortious Interference with Contractual Relations
The defendants seek dismissal of Patriarca’s claim for interference with contractual relations, arguing that as Patriarca cannot establish a contract based on the employment manual, she cannot sustain a claim for interference with contractual relations. This Court notes, however, that even if Patriarca is unable to establish a contract based on the employment manual, Patriarca did enjoy a contractual relationship with CLW, a contract for employment terminable at will. An employee may maintain an action for tortious interference with contractual relations against a co-employee who interferes with her at will employment contract. Mailhiot v. Liberty Bank & Trust Co., 24 Mass.App.Ct. 525, 526 (1987). See also, Shea v. Emmanuel College, 425 Mass. 761, 764 (1997) (where facts warrant, employee may pursue claim for tortious interference with employment contract terminable at will); Wright v. Shriners Hospital for Crippled Children, 412 Mass. 469, 476 (1992) (same). “To establish intentional interference with . . . contractual relations, the plaintiffs must show (1) the existence of a contract . . . which contemplated economic benefit; (2) the defendants’ knowledge of the contract . . . ; (3) the defendants’ intentional interference with the contract . . . for an improper purpose or by improper means; and (4) damages.” Swanset Development Corp. v. Taunton, 423 Mass. 390, 397 (1996). Patriarca has alleged a contract at will with CLW; she has alleged that Bailey knew of that contract; she has alleged that Bailey interfered with that contract by encouraging her to commit fraud; and she has alleged that she was constructively discharged from employment at CLW as a result of Bailey’s conduct. Patriarca has accordingly stated a claim against Bailey for interference with contractual relations.
D. Count IV — Negligent Supervision/ Negligent Retention
Count IV of the complaint alleges negligent supervision/negligent retention of Bailey by the CLW and its board of directors. The defendants seek to dismiss Count IV on the grounds that the claim is precluded by the exclusivity provisions of the Workers’ Compensation Act, G.L.c. 152.
As a preliminary matter, this Court is not satisfied that a claim against an employer for negligent supervision/negligent retention is available to employees. “The torts of negligent hiring, retention, and supervision ordinarily relate to situations where ‘employees are brought into contact with members of the public in the course of an employer’s business.’. .. Thus, the duty of an employer to avoid negligence in the hiring, supervision and retention of employees ordinarily runs to members of the public, not to employees.” Vicarelli v. Business International, Inc., 973 F.Supp. 241, 246 (D.Mass. 1997). See also, Choroszy v. Wentworth Institute of Technology, 915 F.Supp. 446, 452 (D.Mass. 1996) (employee’s negligent supervision/retention claim against employer “troublesome” and unsupported by Massachusetts law); Hirsch, Labor and Employment in Massachusetts, s. 13-8 (issue of whether employee may bring suit against employer for negligent supervision unresolved).[4] This Court will not, however, dismiss Patriarca’s claim for negligent supervision-negligent retention on that basis at the motion to dismiss stage. “A complaint should not be dismissed simply because it asserts a new or extreme theory of liability or improbable facts.” Jenkins v. Jenkins, 15 Mass.App.Ct. 934, 934 (1983). “(I]t is important that new legal theories be explored and assayed in light of actual facts rather than a pleader’s suppositions.” New England Insulation Co. v. General Dynamics Corp., 26 Mass.App.Ct. 28, 30 (1988), quoting 5 Wright & Miller, Federal Practice and Procedure, s. 1357 at 603 (1969 and supp. 1987).
Assuming, arguendo, that Massachusetts recognizes an employee’s claim for negligent supervision/negligent retention against an employer, this Court must then consider whether Patriarca’s claim is precluded by the provisions of the Workers’ Compensation Act. “In determining whether the workers’ compensation act bars common law claims, we look at the nature of the claims, not the source of the injuries ...” Doe v. Purity Supreme, 422 Mass. 563, 566 (1996). “(C)ommon law claims survived where ‘physical or mental harm is incidental, and is not an indispensable ingredient’ of the claim.” Green, quoting Foley I, 381 Mass. 545 (1980).
As Patriarca concedes, to the extent that her claim alleges emotional distress or physical harm resulting from her termination, her claim is barred by the exclusivity provisions of the Workers’ Compensation Act. G.L.c. 152, s. 24 precludes common law claims, such as negligent supervision-negligent retention, where mental harm is the “essence” of the claim. See Green v. Wyman-Gordon Co., 422 Mass. 551, 560 (1996). See also, Clarke v. Kentucky Fried Chicken of California, Inc., 57 F.3d 21, 27-29 (1st Cir. 1995) *489 (claims for negligent hiring-supervision-retention barred by exclusivity provisions of Massachusetts Workers’ Compensation Act); Felinska v. New England Teamsters and Trucking Industry Pension Fund, 885 F.Supp. 474, 478 (D.Mass. 1994); Choroszy v. Wentworth Institute of Technology, 915 F.Supp. 446, 452 (D.Mass. 1996) (same); Ruffino v. State Street Bank and Trust Company, 908 F.Sup. 1019, 1052 (D.Mass. 1995) (same); Galdauckas v. Interstate Hotels Corp., 901 F.Supp. 454, 469-70 (D.Mass. 1995) (same). Patri-arca contends, however, that mental harm is not the essence of her claim, but rather, that the defendants’ tortious conduct caused the loss of her employment and all the economic benefits which accompany her employment, as well as injury to her reputation. Accordingly, she argues that, because Count IV does not state a cause of action for “personal injury” cognizable under the Workers’ Compensation Act, her claim survives the motion to dismiss.
This Court finds that Patriarca’s argument is without merit. A plaintiff cannot evade the exclusivity provisions of the workers’ compensation act by waiving her right to recover an element of damage compen-sable and, indeed, normally predominant, under the theory under which she proceeds;[5] illogical results would occur. A plaintiff could elect to sue his employer under any tort based remedy, such as assault and battery, and by waiving his right to pursue damages for bodily injury and emotional distress and seeking only damages for the loss of his employment, could avoid the implications of the workers’ compensation exclusivity provisions.
The Court, furthermore, is unaware of a tort remedy for negligently causing a fellow employee to lose his/her job. Indeed, recognition of Plaintiffs tort claim in the circumstances of this case would be tantamount to creating a new tort of negligent interference with contractual relations, which this Court declines to do. Patriarca’s claim for economic damages only, therefore, sounds in breach of contract, not tort.[6] This Court believes that Patriarca cannot seek to pursue a tort based remedy, and then elect to pursue only contract based damages to circumvent the provisions of the Workers’ Compensation statute. Moreover, this Court notes that in seeking economic damages, Patriarca’s claim here is duplicative of her count for wrongful termination in violation of public policy and for breach of her contract of employment. Accordingly, Patriarca’s claim for negligent supervision-negligent retention is dismissed.
E. Individual Liability of Board of Directors
Patriarca’s complaint seeks to hold members of the CLWs Board of Directors individually liable for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent supervision/retention. Engberg, Manning and Ewald, members of the Board of Directors, seek dismissal of the claims against them pursuant to the immunity provisions of G.L.c. 231, §85W which provides that “. . . no person who serves without compensation, other than reimbursement for actual expenses, as a . . . Director . . . of any non-profit charitable organization . . . shall be liable for any civil damages as a result of any acts or omissions relating solely to the performance of his duties as . . . Director . . . provided however that the immunity conferred by this section shall not apply to any acts or omissions intentionally designed to harm or to any grossly negligent acts or omissions that result in harm to the person . . .”
Apart from her allegations against director Robert Bailey, Patriarca’s complaint does not recount any acts or omissions on the part of the other Directors that would rise to the level of intentional conduct or gross negligence. As Patriarca seeks to hold the directors individually liable for allegedly negligent acts committed while in the scope of their employment, the claims against them must be dismissed in accordance with the immunity provisions of G.L.c. 231, §85W.
ORDER
For the foregoing reasons, it is therefore ORDERED that the defendants’ motions to dismiss are ALLOWED as to Counts IV and DENIED as to Counts I, II and in. It is further ORDERED that all counts of the complaint are dismissed as to defendants James C. Engberg, Thomas Manning and Teresa Ewald.

 The covenant of good faith and fair dealing accompanying an at-will employment contract is of limited scope: an employer may not terminate an employee without cause, in bad faith, in order to avoid payment of compensation due for the employee’s past service. Gram v. Liberty Mutual Ins. Co., 384 Mass. 659, 672 (1981); Fortune v. National Cash Register Co., 373 Mass. 96, 106-06 (1977). Patriarca does not contend that she is due compensation for past service; rather, she alleges that CLW cannot discharge her from employment for failing to comply with Bailey’s solicitation to commit fraud.

 This Court notes that Patriarca does not contend that she was terminated, but rather, that she was constructively discharged. An employee is constructively discharged “if, based on an objective assessment of the conditions under which the employee has asserted he was expected to work, it could be found that [the conditions] were so difficult as to be intolerable.” GTE Products Corp. v. Stewart, 421 Mass. 22, 34 (1995) (emphasis in original). Patriarca’s complaint alleges that Bailey “forc[ed] [her] to resign.” This allegation, in conjunction with Patriarca’s past experiences with Bailey, is sufficient to establish a constructive discharge, at least for purposes of this motion to dismiss. Patriarca may be able to prove a “set of facts in support of [her] claim which would entitle [her] to relief,” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957), and her claim is therefore not subject to dismissal.

 This Court notes that the lack of authority on negligent supervision claims may well be attributable to the preclusion of such common law claims by the Workers’ Compensation Act. See Choroszy at 450 (lack of authority “may be result of the workers’ compensation statute rather than any studied objection to the imposition of liability on an employer for employee-on-employee misconduct").

 To establish the tort of negligent supervision /negligent retention, the plaintiff must allege that the employer breached a duty of care owed to him and that the plaintiff was harmed as a foreseeable result of that breach of duty. Copithorne v. Framingham Union Hospital, 401 Mass. 860, 862 (1988). Specifically, the plaintiff must prove that (1) the employer knew or should have known of the employee's proclivity to commit misconduct; and (2) the employer failed to take corrective action. Id.

 Furthermore, insofar as Patriarca seeks economic damages only for her claim in negligence, her claim may be barred by the economic loss doctrine. That doctrine provides that where economic damages only are sought, an individual may not pursue a claim in negligence. See FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993) (“purely economic losses are unrecoverable in tort... in the absence of personal injury or property damage”).