Olivia HALL

v.

**FMR CORPORATION and
Neil Goulding.**

Civil Action No. 07–CV–12307–RGS.

United States District Court,
D. Massachusetts.

June 19, 2008.

Paul H. Merry, Attorney at Law, Boston, MA, for Olivia Hall.

Christopher W. Sanzone, John T. McCarthy, Sanzone & McCarthy, LLP, Wellesley, MA, for FMR Corporation and Neil Goulding.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

STEARNS, District Judge.

On October 31, 2005, Olivia Hall resigned from defendant FMR Corporation (FMR), a financial services firm, because of health and emotional problems that she attributes to "differential treatment." After the Massachusetts Commission Against Discrimination (MCAD) dismissed her administrative charge as untimely, Hall filed this Complaint alleging discrimination, retaliation, and negligence. FMR and Neil Goulding, a former supervisor of Hall's, move to dismiss all but one of Hall's claims as time-barred, preempted, or non-viable.

### BACKGROUND

The factual allegations of the Complaint, which for present purposes are deemed true, are as follows. Hall, who was born in Honduras, is of African descent. She has worked in the financial services industry for more than twenty years. Her area of expertise is in stock options. FMR provides investment and brokerage advice to clients throughout the United States. In 1991, Hall began working for an affiliate of FMR, National Financial Services, LLC. In 2001, Hall transferred to FMR's Registered Investment Advisory Group (RIAG), and relocated to Smithfield, Rhode Island. Prior to the transfer, Hall "consistently received satisfactory or better ratings on the job performance evaluations provided her by defendant FMR and its agents." Complaint ¶ 14. During Hall's tenure in the Smithfield office, defendant Neil Goulding was her supervisor.

Hall worked in the Smithfield office from March of 2001 until her resignation from FMR in October of 2005. Hall was the only office employee able to provide services to Spanish-speaking clients in their native language. After Hall began working in the Rhode Island office, "a change occurred in the management of [RIAG]." *Id.* at ¶ 21. Hall "began to notice that she was treated differently from other employees ..., particularly compared to the treatment accorded white male employees." *Id.* at ¶ 22. A promotion for which Hall was eligible went instead to a less-experienced white male. As Hall perceived it, white males were given preferential treatment regarding "work assignments, compensation and salary increases, personal perquisites and privileges; [while] more intense supervision [was given to] Ms. Hall than white, male employees." *Id.* at ¶ 23.

Among her many complaints, Hall alleges that "white and/or male workers were given preferential treatment respecting their time for reporting to work." *Id.* at ¶ 24. Moreover, "her business and professional accomplishments in support of defendant FMR's business operations and its clients were not being recorded or 'captured' by her supervisor in [FMR's] electronic recording system while similar accomplishments by white male co-workers

were recorded."[1] *Id.* at ¶¶ 25–26. On numerous occasions she complained to her supervisor about the reporting errors, but no corrective measures were ever taken. Hall felt that the way she was being treated was "sufficiently troubling that she contacted defendant FMR's Human Resources Department to notify them about it as contemplated in FMR's Employee Issue Resolution Process."[2] *Id.* at ¶ 33. Hall met with "her supervisor" in late summer of 2005 to register her complaints.[3] *Id.* at ¶ 35.

Hall believes that the "differential treatment" impacted her health, causing her insomnia, depression, and anxiety, all of which had a "negative impact on her relationships with her children and her spouse." *Id.* at ¶¶ 36–38. Hall sought medical advice and treatment "in or before summer and autumn of 2005." At some point in "mid-autumn" of 2005, Hall's physician advised her to quite her job at FMR unless "treatment of her improved." *Id.* at ¶ 40. Hall states that she then informed FMR that she would resign "unless her working conditions improved." *Id.* at ¶ 41.

Hall resigned on October 31, 2005. She "update[d] [FMR's agents] on her differential treatment up through the time when health problems compelled her to cease working and for several months after." *Id.* at ¶ 34. Hall also "continued to pursue FMR's Employee Issue Resolution Process" through an unspecified date in "early December, 2005." *Id.* at ¶ 35. On December 13, 2005, an FMR agent informed Hall that "[FMR] did not intend to take further action regarding her complaint."[4] *Id.* at ¶ 46.

Hall alleges that she "timely filed her complaint with the MCAD." *Id.* at ¶ 47. (Hall filed the charge against FMR and Goulding on October 6, 2006). The MCAD dismissed Hall's charge on August 24, 2007. In a four-page decision, the MCAD related its finding that it lacked jurisdiction because Hall had failed to file within the statutorily prescribed 300 days. *See* Mass. Gen. Laws ch. 151B, § 5. Hall appealed. On September 27, 2007, the MCAD held a preliminary hearing. On October 5, 2007, the MCAD issued an order affirming its earlier decision dismissing Hall's charge. On December 20, 2007, Hall filed this action in the Massachusetts Superior Court.[5] Defendants removed the

---

1. According to Hall, the failure to properly record and report her contributions adversely affected the views of supervisors who prepared her performance evaluations and considered her employees for promotion. *Id.* at ¶ 27.

2. Hall describes the "Employee Issue Resolution Process" as an "established procedure" that is "expressly intended to provide [FMR's] employees with a means [of] addressing issues arising from work-related topics." *Id.* at ¶ 31.

3. The supervisor is not identified in the Complaint.

4. In her MCAD filing, Hall identified the agent as David Johnson, the Vice President of Employee Relations.

5. Hall's Complaint sets out the following claims: Count I—Discrimination under Mass.

Gen. Laws ch. 151B (race); Count II—Discrimination under Mass. Gen. Laws ch. 151B (national origin); Count III—Discrimination under 42 U.S.C. § 1981 (race, color, and national origin); Count IV—Discrimination under Mass. Gen. Laws ch. 151B (sex); Count V—Retaliation under Mass. Gen. Laws ch. 151B; Count VI—Negligent supervision and retention; Count VII—Intentional interference with an advantageous business relationship; and Count VIII—Negligent failure to investigate discrimination. While Hall fails to articulate which claims implicate Goulding, he argues that based on the language of the Complaint only Counts II and VII are directed at him personally. This seems to be true. The court notes that Count VII could not have been brought against FMR in any event. *See Saint Louis v. Baystate Med. Ctr.*, 30 Mass. App.Ct. 393, 404, 568 N.E.2d 1181 (1991).

case to the federal district court on December 17, 2007.

FMR now moves to dismiss the bulk of Hall's Complaint (five counts). FMR argues that Hall's discrimination and retaliation claims—Counts I, II, IV, and V—were not timely-filed with the MCAD. FMR also maintains that Hall's negligence claims (Counts VI and VII) are not actionable because they are preempted by Chapter 151B and the state Workers' Compensation Act. Finally, FMR asserts that Hall's section 1981 claim fails in part as a matter of law.

## DISCUSSION

Fed.R.Civ.P. 12(b)(6) permits the dismissal of a claim for which no plausible measure of relief can be granted. When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in plaintiff's favor. *Parker v. Hurley*, 514 F.3d 87, 90 (1st Cir.2008). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).

■ The principal argument for dismissal advanced by FMR (joined by Goulding with respect to Count II) rests on the statute of limitations. FMR maintains that Hall failed to meet the jurisdictional prerequisite for instituting a lawsuit, namely the filing of a timely MCAD charge. While Hall admits that she missed the statutory deadline, she insists that MCAD regulations permit tolling in her case. Specifically, Hall asserts that

she filed her charge within 300 days of the outcome of an internal FMR grievance process. She also contends that timeliness under a statute of limitations is a factual matter that cannot be concluded as a matter of law.[6]

■ Discrimination claims under 42 U.S.C. § 1981 and Mass. Gen. Laws ch. 151B must be administratively pursued prior to the filing of a lawsuit. *See Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 277–278 (1st Cir.1999). A state plaintiff must file an administrative charge with the MCAD "within 300 days of the occurrence of the alleged harassing or discriminatory event or events." Mass. Gen. Laws ch. 151B, § 5. The MCAD filing requirement has a dual purpose, first to give the agency an opportunity to investigate and conciliate the claim, and second to give a defendant notice of a potential suit. *Carter v. Comm'r of Corr.*, 43 Mass.App.Ct. 212, 217, 681 N.E.2d 1255 (1997). *See also Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir.1996). The failure to file a timely charge of discrimination with the MCAD requires the dismissal of any subsequent lawsuit. *See Davis v. Lucent Techs., Inc.*, 251 F.3d 227, 231 (1st Cir. 2001); *Cuddyer v. Stop & Shop Supermarket Co.*, 434 Mass. 521, 531 n. 11, 750 N.E.2d 928 (2001).

Hall first became aware of the "differential treatment" in August of 2004. She then "contacted someone in FMR['s] Human Resources department and thereafter met with her supervisor sometime in August of 2005." Hall voluntarily resigned from FMR 354 days prior to the filing of her MCAD charge. The only "discriminatory act" alleged by Hall that falls within the 300–day limitations period occurred on December 13, 2005, when an FMR "agent"

---

**6.** This is a very doubtful proposition. *See LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir.1998).

told Hall that "FMR did not intend to take further action" on her internal complaint. As a matter of law, however, this notification cannot be construed as a discriminatory act. *See Sharp v. Gen. Motors Acceptance Corp.,* 2005 WL 3455850, at *4 (N.D.Ga. Dec. 16, 2005) (rejecting the argument that an employer's alleged failure to remedy a supervisor's pre-limitations period conduct constituted an "act" of harassment extending the filing period for an employee's administrative charge); *Cooper v. Wyeth Ayerst Lederle,* 106 F.Supp.2d 479, 489–490 (S.D.N.Y.2000) (employer's alleged failure to adequately address plaintiff's harassment complaints did not constitute an act of harassment for statute of limitations purposes); *see also Janikowski v. Bendix Corp.,* 823 F.2d 945, 947 (6th Cir.1987) ("[R]epeated requests for further relief from a prior act of discrimination will not set the time limitations running anew."); *Goldman v. Sears, Roebuck & Co.,* 607 F.2d 1014, 1018–1019 (1st Cir.1979) (repeated requests for further relief addressing a prior act of discrimination do not create a "continuing" violation).

■ The MCAD recognizes three exceptions to the 300–day limitations period. Specifically, 804 C.M.R. 1.10(2) provides: that the 300 day requirement shall not be a bar to filing in those instances where facts are alleged which indicate that the unlawful conduct complained of is of a continuing nature, or when pursuant to an employment contract, an aggrieved person enters into grievance proceedings concerning the alleged discriminatory act(s) within 300 days of the conduct complained of and subsequently files a complaint within 300 days of the outcome of such proceeding(s). Provided, likewise, that the 300 day requirement shall not be a bar to filing in those instances when, pursuant to 804 CMR 1.10(3)(b), an aggrieved person enters into an agreement to voluntarily mediate the alleged discriminatory acts within 300 days of the conduct complained of and subsequently files a formal complaint within 21 days of the conclusion of such proceedings.

Hall does not assert a continuing violation. Rather, she argues that the grievance process exception to the 300–day filing rule applies in her case. She alleges: (1) that she had an employment relationship with FMR; (2) that FMR had an Employee Issue Resolution Process; and (3) that she followed this process by complaining to FMR representatives.

■ The MCAD considered this assertion before dismissing Hall's charge.[7] In its decision, the MCAD stated that Hall's "internal complaints and letter of complaint sent in November of 2005 do not constitute a grievance proceeding pursuant to an employment contract" and that "[t]he Commission has interpreted this [grievance] exception to apply only to formal grievance proceedings set forth in a collective bargaining agreement...." *See Fallon v. Massachusetts Comm'n Against Discrimination,* 66 Mass.App.Ct. 1116,

---

7. The court can consider MCAD filings (the authenticity of which is not in dispute) without converting a motion to dismiss to one for summary judgment. *See Beddall v. State Street Bank and Trust Co.,* 137 F.3d 12, 17 (1st Cir.1998) ("[W]hen ... a complaint's factual allegations are expressly linked—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."); *Edwin v. Blenwood Assocs., Inc.,* 9 F.Supp.2d 70, 72 (D.Mass.1998) (when an MCAD charge is substantively referenced in a complaint, a court "may consider the MCAD [charge] in making its decision on [a 12(b)(6)] motion [to dismiss] without converting the matter into a summary judgment proceeding.").

2006 WL 1914134, at *3 (2006) (unpublished opinion) (statute of limitations not tolled by City's internal administrative responses to plaintiff's *ad hoc* complaints where plaintiff did not initiate any formal grievance process, affirming decision in *Massachusetts Comm'n Against Discrimination v. City of Malden,* 2003 WL 22410655, at *1 (MCAD October 8, 2003)). The Supreme Judicial Court (SJC) has repeatedly held that the MCAD's interpretation of Chapter 151B and its implementing regulations is to be given deference. *See e.g., College–Town, Div. of Interco, Inc. v. Massachusetts Comm'n Against Discrimination,* 400 Mass. 156, 166, 508 N.E.2d 587 (1987); *see also Beaupre v. Cliff Smith & Assocs.,* 50 Mass.App.Ct. 480, 490–492, 738 N.E.2d 753 (2000). In her Complaint, Hall does not allege that she was covered by a collective bargaining agreement or that she pursued a formal grievance under the terms of such an agreement. Consequently, the exception provided by 804 C.M.R. 1.10(2) on which Hall relies does not apply.

■■■ In the alternative, Hall argues that the court should equitably toll the 300–day limitations period on grounds that she relied on false assurances by defendants that they would redress her grievances internally.[8] Equitable tolling is available to a plaintiff where she is "excusably ignorant" of the statutory filing requirements or where she is "affirmatively misled" by defendant (or the MCAD). *Lucent Techs.,* 251 F.3d at 234, citing *Andrews v. Arkwright Mut. Ins. Co.,* 423 Mass. 1021, 1022, 673 N.E.2d 40 (1996) (rescript). Equitable tolling, however, is not liberally applied in discrimination cases—"equitable tolling is reserved for exceptional cases." *Chico–Velez v. Roche Prods., Inc.,* 139 F.3d 56, 58–59 (1st Cir. 1998).[9] Nothing of a factual nature is alleged in the Complaint to support the contention that FMR and/or Goulding affirmatively misled Hall into delaying her filing. Consequently, the motion to dismiss Counts I, II, IV, and V will be *ALLOWED.*

■■■ Defendants also argue that so much of Count III as asserts a claim of discrimination based on national origin under 42 U.S.C. § 1981 is not viable. Although the distinction may seem a fine one, it has long been held that section 1981 permits discrimination claims based on ancestry, but not solely on national origin. *See St. Francis Coll. v. Al–Khazraji,* 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) ("[D]iscrimination based on birthplace alone is insufficient to state a claim under § 1981.... [However], Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory."). Whether a claim of discrimination based on ancestry is cognizable under section 1981 depends upon whether the group whose ancestry the plaintiff shares was viewed (rightfully or wrongfully) as racially distinct and entitled to protection when section 1981 was enacted.[10] *See Shaare Tefila Congregation v.*

---

8. No specific allegation is leveled at Goulding in this regard.

9. Equitable tolling also does not apply where a plaintiff by exercising due diligence could have discovered the information essential to the bringing of a charge. *Wynn & Wynn, P.C.*

*v. Massachusetts Comm'n Against Discrimination,* 431 Mass. 655, 673, 729 N.E.2d 1068 (2000).

10. Courts have applied this test in approving section 1981 claims based on Italian, *Bisciglia v. Kenosha Unified Sch. Dist. No. 1,* 45

*Cobb,* 481 U.S. 615, 616–617, 107 S.Ct. 2019, 95 L.Ed.2d 594 (1987) (applying 42 U.S.C. § 1982). The Complaint alleges that Hall was born in Honduras and that she is African–American. Because there is no natural association between Honduran birth and African ancestry (the expected associations are with the Spanish language and Hispanic culture), Hall cannot maintain a section 1981 national origin claim.[11] Consequently, so much of Count III as alleges discrimination based on national origin must be *DISMISSED.*

▆▆▆▆ Tortious interference with advantageous (business) relations requires that a plaintiff prove four elements: "(1) the existence of a contract or business relationship; (2) the defendants' knowledge of the contract or business relationship; (3) the defendants' intentional interference with the contract or business relationship for an improper purpose or by an improper means; and (4) damages." *Swanset Dev. Corp. v. Taunton,* 423 Mass. 390, 397, 668 N.E.2d 333 (1996), citing *United Truck Leasing Corp. v. Geltman,* 406 Mass. 811, 812, 815–817, 551 N.E.2d 20 (1990). Goulding asserts that Hall's tortious interference claim fails on multiple grounds: Hall has not pled that he acted with any malicious intent; the claim is time-barred; and Chapter 151B provides an adequate and therefore exclusive remedy for her claims of employment discrimination.

While Hall has failed in Count VII to plead, in so many words, "an improper purpose" or "improper means," on a motion to dismiss the court must draw the inference that discrimination is the improper purpose that Hall intends to allege. Goulding makes the additional argument that Hall should not be permitted to avoid the administrative filing requirements of Chapter 151B by resorting to a tortious interference claim. However, in *Charland v. Muzi Motors, Inc.,* 417 Mass. 580, 631 N.E.2d 555 (1994), the SJC appears to have left the door open to common-law tort claims that circumvent Chapter 151B's exclusivity provisions. In *Charland,* the SJC noted:

> [t]he decisions in *O'Connell v. Chasdi,* 400 Mass. 686, 511 N.E.2d 349 (1987), and *Comey v. Hill,* 387 Mass. 11, 438 N.E.2d 811 (1982), are not to the contrary. In *O'Connell v. Chasdi, supra* 400 Mass. at 693, 511 N.E.2d 349, where c. 151B was inapplicable, the court decided that its exclusivity provisions do not preclude an independent claim of a violation of an employee's equal protection rights under art. 1 of the Declaration of Rights, as amended by art. 106 of the Amendments. In *Comey v. Hill, supra* 387 Mass. at 20, 438 N.E.2d 811, we ruled that an employee was not foreclosed by c. 151B from raising a tort claim under common law principles established prior to adoption of c. 151B.

*Id.* at 586, 631 N.E.2d 555. Where the SJC has not clearly stated its intent to preclude all alternative theories of recovery in employment discrimination cases, and especially where as here there is no

---

F.3d 223, 229–230 (7th Cir.1995), French, *Franchitti v. Bloomberg,* 2004 WL 2366183, *3–4 (S.D.N.Y.2004), and Greek, *Drikos v. City of Palos Heights,* 2003 WL 22872130, *2 (N.D.Ill.2003), ancestry.

**11.** In a Memorandum of Reasons, Hall cites *Cuello–Suarez v. PREPA,* 737 F.Supp. 1243 (D.P.R.1990), as precedent supporting her claim under section 1981. In that case, the court held that plaintiff, a citizen of the Dominican Republic who alleged that she had been discriminated against "on the basis of her place of birth," stated a valid section 1981 claim because her ancestry (Hispanic) and national origin were "identical as a factual matter." The case stands for the reverse of what Hall contends.

available remedy under Chapter 151B (albeit through no fault of defendants), it is not the province of the federal court to alter the boundaries of Massachusetts law. *Cf. Daigle v. Maine Med. Ctr., Inc.*, 14 F.3d 684, 689 (1st Cir.1994) ("A federal court sitting in diversity jurisdiction and called upon in that role to apply state law is absolutely bound by a current interpretation of that law formulated by the state's highest tribunal."); *see also In re Bank of Boston Corp. Sec. Litig.*, 762 F.Supp. 1525, 1536 (D.Mass.1991) ("It is not the role of the federal court to create or to extend the law of the state."). Consequently, the motion to dismiss Count VII will be *DENIED*.

▮ Count VI asserts a claim (against FMR) for "Negligent Supervision and Retention," a cause of action that Massachusetts courts have not recognized in an employee-employer context. *See Choroszy v. Wentworth Inst. of Tech.*, 915 F.Supp. 446, 450–451 (D.Mass.1996). Rather, the tort is limited to violations of an employer's duty to protect the public at large from the misfeasance of its employees. *See Foster v. The Loft, Inc.*, 26 Mass.App. Ct. 289, 290–291, 526 N.E.2d 1309 (1988); *Choroszy*, 915 F.Supp. at 450. For the same prudential reasons that constrain the court from dismissing Count VII of the Complaint, it must *DISMISS* Count VI.[12],[13]

### ORDER

For the foregoing reasons, FMR's motion to dismiss Counts I, II, IV, V, VI, and VIII of the Complaint is *ALLOWED.* FMR's and Goulding's motion to dismiss Count III is *ALLOWED* insofar as it alleges discrimination based upon national origin. Goulding's motion to dismiss Count VII is *DENIED.*

SO ORDERED.

---

12. Another basis for dismissing Count VI is the preemption provision of the Workers' Compensation Act, Mass. Gen. Laws ch. 152, § 24. The Act bars common-law tort claims brought by an employee against an employer that arise out of personal injuries that occur in the workplace. *See Choroszy*, 915 F.Supp. at 452 (negligent hiring and retention); *Green v. Wyman–Gordon Co.*, 422 Mass. 551, 558–561, 664 N.E.2d 808 (1996) (negligent infliction of emotional distress and negligent su-

pervision and retention); *Catalano v. First Essex Sav. Bank*, 37 Mass.App.Ct. 377, 379–380, 639 N.E.2d 1113 (1994) (negligent infliction of emotional distress).

13. Hall's claim of "Negligent Failure to Investigate Discrimination" (Count VIII) is a similarly unrecognized tort at state law that would be (were it viable) preempted by Chapter 151B.